**Hosey JOHNSON, Petitioner-Appellant,**

v.

**Donald A. CABANA and the Attorney General of the State of Mississippi, Respondents-Appellees.**

No. 85–4646.

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1986.

Robert W. Smith, Biloxi, Miss. (Court-appointed), for petitioner-appellant.

Hosey B. Johnson, pro se.

Harold H. Brittain, Asst. Atty. Gen., Bill Allain, Atty. Gen., Jackson, Miss., for respondents-appellees.

Before WISDOM, DAVIS and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The petitioner appeals the denial of his writ for habeas corpus alleging that he

---

received ineffective assistance of counsel. We affirm.

## I.

On March 26, 1980, at approximately 6:50 p.m., L.H. Case arrived with his wife at the Kim K Apartments in Gulfport, Mississippi, to pick up a friend. While Mrs. Case went into the apartment complex to get their friend, Mr. Case remained in the car. A young black man appeared at Mr. Case's window with a gun, and demanded Mr. Case's wallet, Mrs. Case's purse, and the car keys.

Among the items stolen by the assailant were two "Handibank" cards issued to the Cases by the Hancock Bank of Gulfport. These cards were used thirty-seven times from 7:17 p.m. on the night of the robbery until 7:55 a.m. the following morning. On more than thirty separate occasions, during this approximate twelve-hour period, cameras located at the Handibank terminals photographed Hosey Johnson using the Cases' Handibank cards. At a line-up and at trial, Mr. Case identified Johnson as his assailant.

At his trial on the armed robbery charge in August 1980, Johnson admitted using the cards but denied robbing Mr. Case. He testified that as he left Jay's Lounge between 6:30 and 7:00 p.m. on March 26, 1980, he met Clarence Smith and accepted Smith's invitation for a ride in his car. Johnson testified that after he got into Smith's car, Smith handed Johnson two packages containing the Handibank cards; Smith and Johnson then picked up Jessie Reynolds and the three men began withdrawing money with the two cards. Neither Smith nor Reynolds testified at this trial which ended in a mistrial after the jury was unable to agree on a verdict.

Johnson was retried on January 13, 1981, for the same offense. At this trial, both Smith and Reynolds testified for the state that they had not participated with Johnson in the use of the Handibank cards and denied having any knowledge of them. The jury found Johnson guilty and directed that he be sentenced to life imprisonment.

The conviction was affirmed by the Mississippi Supreme Court. *Johnson v. State,* 416 So.2d 679 (Miss.1982).

Before the first trial, Johnson told his attorney, Mr. Major Varnado, that he had been convicted of several crimes, including aggravated assault, possession of marijuana and marijuana paraphernalia, contributing to the delinquency of a minor and an armed robbery of the Majik Market that he committed in early April 1980. At both trials, Johnson testified in his own defense and admitted these convictions. After Johnson was convicted in the second trial, Varnado obtained Johnson's "rap sheet" and discovered that it did not reveal an armed robbery conviction. Mr. Varnado then learned that Johnson did not plead guilty to the April armed robbery; instead he acquiesced in the revocation of his parole following his arrest for the April armed robbery. After his motion for leave to proceed in error *coram nobis* was denied by the Mississippi Supreme Court, Johnson petitioned the federal district court for a writ of habeas corpus alleging that he had been denied effective assistance of counsel by Varnado's failure to examine his "rap sheet" before trial. In denying Johnson's writ application, the district court, following a hearing, concluded that Varnado had reasonably relied on Johnson's admission to the armed robbery conviction and that Johnson had not been prejudiced by this admission at trial. Johnson contends that the district court erred in rejecting his contention that Varnado's failure to investigate his criminal record constitutes deficient performance and that this deficient performance operated to his prejudice. Because we find no error in the district court's finding that counsel's performance was not deficient, we do not reach the prejudice issue.

## II.

Varnado's decision not to obtain Johnson's "rap sheet" is not deficient unless it was unreasonable considering all circumstances with "a heavy measure of deference to counsel's judgments."

*Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Whether the decision is reasonable "may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, ... on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Id.* In assessing counsel's decision, we strive to "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 104 S.Ct. at 2065.

Johnson concedes that he informed his attorney before the trial that he had been convicted of armed robbery. But, he argues that counsel should have obtained his rap sheet because: (a) it was easy for counsel to obtain; (b) counsel should have assumed that Johnson was lying to him about his convictions; (c) counsel knew that Johnson was unschooled in the law and should not have relied on his account of his convictions.

Johnson urges us to adopt a rule that would require counsel to always investigate all information that is readily available to him, including a defendant's criminal record. We decline to impose such an inflexible requirement upon counsel without regard to the peculiar facts of the individual case. Counsel's failure to develop facts that are readily available will sometimes result in a finding of deficient performance; however, if counsel receives information from his client, the accuracy of which counsel has no reason to doubt, it will ordinarily be unnecessary for counsel to verify the information from an alternate source even if the information from that source is readily available. The adoption of the rule suggested by Johnson would shift the court's focus away from the reasonableness of counsel's actions to a determination of whether information is readily available. In *Strickland,* the Supreme Court warned that "detailed guidelines for its evaluation [of an attorney's performance] would encourage the proliferation of ineffectiveness challenges." 466 U.S. at 690, 104 S.Ct. at 2066. Therefore, an ineffectiveness claim must be examined "on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

■ We also find no merit to Johnson's argument that Mr. Varnado was obliged to assume that Johnson was lying to him about his conviction. Counsel may have good reason to doubt that his client has disclosed all of his convictions; but counsel does not ordinarily have reason to suspect that his client has admitted a conviction that did not occur. Consequently, we decline to impose a duty on counsel to assume that his client has fabricated non-existent convictions.

The only serious issue presented is whether the district court erred in finding that Mr. Varnado was justified in relying on Johnson's account of his criminal convictions.

Before the trial of the instant case, Johnson had been convicted of aggravated assault, possession of marijuana and marijuana paraphernalia, contributing to the delinquency of a minor and his parole was revoked on the assault conviction. The district court conducted a hearing on petitioner's habeas claims and heard the testimony of both Johnson and his counsel, Mr. Varnado. Relying on this testimony and inferences to be drawn from Johnson's experience in the criminal justice system, the district court found that Johnson had failed to show any "medical or intellectual reason that should have put his trial counsel on notice that the information provided by defendant was unreliable." This finding is fully supported by the record and is not clearly erroneous. The district court was justified in finding that counsel could reasonably infer that Johnson was familiar enough with criminal proceedings to know what charges he had been convicted of.

Johnson relies on *Davis v. Alabama,* 596 F.2d 1214 (5th Cir.1979), *vacated as moot,* 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980), to support his argument that an attorney has a duty to investigate and develop evidence helpful to the defense when

he knows the defendant will not be able to assist in constructing a defense.

Johnson's reliance on *Davis* is misplaced. In *Davis*, we determined that an attorney's failure to conduct an investigation for evidence that would support the defendant's only possible defense, insanity, rendered his assistance ineffective. The State faulted the defendant for failing to give counsel the necessary information to develop the defense. We rejected that argument because the accused was unstable and obviously unable to assist counsel in preparing the insanity defense.

The facts of today's case are readily distinguishable from those in *Davis*. Here, the district court found that counsel had no reason to doubt the reliability of Johnson's account of his previous criminal convictions. Thus, unlike Davis' counsel, who should have anticipated his client's inability to comprehend the facts relevant to his insanity defense, Johnson's counsel had no reason to suspect that Johnson would not know what charges he had been convicted of.

Because the record fully supports the district court's finding that Mr. Varnado reasonably relied on Johnson's statement that he had been convicted of robbing the Majik Market, we agree that Johnson failed to establish that counsel's performance was deficient. Because no relief is available to Johnson under *Strickland* unless he establishes *both* deficient performance and prejudice, *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, we need not consider whether the erroneous admission of the robbery prejudiced Johnson.

AFFIRMED.

WISDOM, Circuit Judge, dissenting.

I respectfully dissent.

This case is sui generis. Hosey Johnson, the petitioner, his attorney, the prosecutor and, of course, the trial judge and the jury all labored under the mistaken belief that Johnson had pleaded guilty to a second strong-arm robbery that occurred two weeks *after* the armed robbery for which he was tried, convicted, and sentenced to life imprisonment. In fact, Johnson had only acquiesced in the revocation of his parole following an arrest for armed robbery. Mississippi law forbids inquiry into the nature of a defendant's parole violation even though he testifies in his own behalf.

Johnson himself caused the mistake. Confused by what had happened to the second charge, he told Mr. Varnado, his attorney in this case, that he had pleaded guilty. Johnson took the stand. Then, thinking to take some of the sting out of the second conviction by bringing out that assumed fact himself, rather than having the prosecutor bring it out, Mr. Varnado questioned Johnson about it. There can be no doubt that this misinformation was highly prejudicial. Under Mississippi law the jury decides whether to impose a life sentence on a defendant convicted of armed robbery. Miss.Code Ann. § 97–3–79 (Supp. 1985). If the jury decides not to impose a life sentence, the court imposes a sentence of more than three years but less than life. *Id.*; *Lee v. United States*, 322 So.2d 751, 753 (Miss.1975).

The majority's position is that the injury, if any, was self-inflicted. Mr. Varnado acted reasonably. An attorney is entitled to rely on information he receives from his client as to what that client did. I have no quarrel with that as a general proposition. But it should not apply to this case.

I would take judicial knowledge of the fact that laymen as a rule and particularly black defendants in the Deep South have a very limited understanding of criminal legal processes. A reasonably effective defense of a black accused in this part of the country imposes on the defense attorney the duty of obtaining and examining the records—the "rap sheet". A glance at Johnson's rap sheet would have disclosed that he had *not* been convicted of any armed robbery prior to the trial. Mr. Varnado obviously understood the importance of a rap sheet, for before trial he filed a motion to obtain Johnson's. Mr. Varnado is a lawyer of integrity and experience. For reasons which are unknown, the prose-

cutor failed to furnish the rap sheet. For reasons which are unknown, Johnson's attorney took no steps to follow through on his motion for production of the rap sheet. Hand in hand, the defendant, the defense attorney, and the prosecutor cooperated in inducing the jury to sentence Johnson to life imprisonment.

I would grant the writ.