James Ray YOUNG, Petitioner-Appellee,

v.

James A. LYNAUGH, Interim Director Texas Department of Corrections, Respondent-Appellant.

No. 86–2064.

United States Court of Appeals, Fifth Circuit.

July 20, 1987.

---

Charles A. Palmer, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellant.

Maury Hexamer, Sherman, Tex. (court-appointed), for petitioner-appellee.

Before GOLDBERG, RUBIN and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

After many years of seeking relief from an allegedly involuntary guilty plea to a 1963 burglary charge, Petitioner James

Ray Young obtained from the district court a writ of habeas corpus. Young claimed to receive not merely ineffective assistance of counsel, but no assistance whatever regarding his plea. Below and on appeal, the state has played procedural football, urging the federal judiciary to punt Young's claims entirely, or at least to lateral them back to the state courts. We find that the district court properly entertained Young's petition, but that it must retain possession of his claims for further substantive consideration.

The state contends that Young is not "in custody," and thus that the district court lacked jurisdiction to consider his petition. Second, even if jurisdiction exists, the state urges us to decline jurisdiction on equitable and comity-based grounds. Third, the state argues that Young has failed to exhaust state remedies by presenting corroborative testimony at his federal habeas hearing. Fourth, the state claims that fact-findings of the state court habeas judge preclude review of Young's substantive claims. Each of these contentions is meritless. However, the district court failed properly to find prejudice under the applicable standard for ineffective assistance of counsel. We therefore vacate the judgment and remand for further proceedings consistent with this opinion.

## I. The Players and the Background

Late in 1962, an eighteen-year-old Young was arrested for a burglary in Cause No. 27530. Lacking counsel and erroneously believing that his probation—resulting from an uncounseled plea arrangement, formed in Grayson County, Texas six weeks prior to this arrest—had been revoked, Young negotiated a plea arrangement for a two-year concurrent sentence.

On February 16, 1963, counsel was appointed to represent Young in the 15th District Court of Grayson County. After conducting no inquiry regarding the facts of Young's case, the status of Young's probation, the strength of the prosecution's case or Young's potential defenses thereto, counsel, also presuming that Young's probation had been revoked, advised Young to plead guilty to the arrangement that Young had negotiated. Counsel did not instruct Young as to the elements of the crime with which Young was charged, nor as to the consequences and nature of Young's plea. Young pled guilty that same day, and did not appeal this conviction.

In 1964, Young was convicted of burglary, Cause No. E-4624-K, in the Criminal District Court No. 4 of Dallas County, Texas. Young did not appeal.

In 1976, Young again was arrested and charged with burglary, Cause No. F76-4846-PI, in the Criminal Court No. 2 of Dallas County. Young pled not guilty, but the jury convicted. The indictment in F76-4846-PI set forth the two prior burglary convictions, which the jury found to have occurred. The trial court assessed the mandatory punishment for a burglary sentence enhanced by the two prior convictions—which is life imprisonment, *see* Texas Penal Code Ann. § 12.42(d) (Vernon Supp.1974)—and Young unsuccessfully appealed this conviction. *Young v. State*, 573 S.W.2d 817 (Tex.Crim.App.1978).

Late in 1978, Young filed a *pro se* habeas corpus petition in the Grayson County court challenging the 1963 conviction on the basis of ineffective assistance of counsel and an unknowing and involuntary plea. The judge, who had accepted Young's 1963 plea, appointed counsel, who amended the petition. The state court judge held an evidentiary hearing in 1979, and issued an order, including findings of fact and conclusions of law, denying relief on the merits. Young unsuccessfully appealed this order.

In 1980, Young filed the instant federal writ application *pro se*, challenging the 1963 conviction on the same grounds. Late in 1980, the district court referred the case to a magistrate, who issued a show cause order to the state in 1981. The state responded with a motion to dismiss, conceding habeas jurisdiction but arguing that Young's failure to object to the 1963 sentence during its use for enhancement at the 1976 trial constituted a procedural default barring further consideration of Young's 1963 claims. Young responded to the mo-

tion to dismiss, and requested an evidentiary hearing and the appointment of counsel.

In 1983, the district court referred the case to another magistrate who, in 1984, appointed the same attorney who argued Young's state habeas petition. During a telephone conference, Young's counsel indicated that Young was challenging only the 1963 conviction, not its use for enhancement. At that point, the state objected that Young was not "in custody" for habeas purposes.

The magistrate then held an evidentiary hearing and, in 1985, issued proposed findings of fact and conclusions of law, suggesting that the district court reject the state's procedural challenges and grant relief on Young's substantive claims. The state objected to the magistrate's recommendations. On December 30, 1985, the district court adopted the magistrate's findings and granted relief from the 1963 conviction because Young had received ineffective assistance of counsel. The state appeals.[1]

## II. Jurisdiction on the § 2254(a) Playing Field

28 U.S.C. § 2254(a) provides that "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." In *Carter v. Estelle*, 677 F.2d 427, 450 n. 22 (5th Cir.1982) (citation omitted), *reh. denied*, 691 F.2d 777 (5th Cir.1982), *cert. denied*, 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983),

> [w]e note[d] that it is still an unsettled question in this circuit to what extent the use of an earlier sentence for enhance-

ment purposes in a present sentence satisfies the custody requirement for the purpose of an attack on the former sentence. *See generally Escobedo v. Estelle*, [650 F.2d 70, *modified on petition for rehearing*, 655 F.2d 613 (5th Cir. 1981) ] (suggesting that requirement may be satisfied, if, according to the rule of *Sinclair v. Blackburn*, 599 F.2d 673, 676 (5th Cir.1979), *cert. denied*, 444 U.S. 1023, 100 S.Ct. 684, 62 L.Ed.2d 656 (1980), petitioner can show a positive demonstrable relationship between the prior conviction and the petitioner's present incarceration).

The district court properly identified this state of the law, and settled the question by finding Young in custody due to the 1976 enhancement.

Although the state conceded below and on appeal that "as a matter of historical fact, Young is 'in custody' due to his 1963 conviction because it was used for enhancement of punishment in 1976.... [the state contends that] Young is not 'in custody' for purposes of the instant federal habeas action because he has made the tactical decision to challenge *only* the 1963 conviction and not its use for enhancement." First, the state argues, because Young has fully served the 1963 conviction, there is no "positive, demonstrable relationship" under *Sinclair* between the conviction that Young challenges and Young's current custody so as to convey jurisdiction. Second, because Young allegedly is likely successfully subsequently to challenge his 1976 conviction if this writ were to issue, a finding of custody would sanction piecemeal litigation. Third, were we to entertain the petition, the state would be deprived of an opportunity to argue procedural default under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).[2]

---

**1.** During the pendency of the federal writ application, Young challenged the 1964 conviction in a petition to the Criminal Court No. 2 of Dallas County. This petition was unsuccessful. Young's application to the Court of Criminal Appeals was denied in 1983.

**2.** We discuss the state's second and third challenges below, because these comity-based or equitable arguments are not jurisdictional. *See*

*Sykes,* 433 U.S. at 83, 97 S.Ct. at 2504 (*Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), overruling *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), "acknowledged 'a limited discretion in the federal judge to deny relief ... to an applicant who had deliberately by-passed the orderly procedure of the state courts'" "[a]s a matter of comity but not of federal power"); *id.* at 96 n. 4, 97 S.Ct. 2511 n. 4

■ The state candidly concedes that Young's 1963 conviction is "positively and demonstrably related" to the enhanced 1976 life sentence, but (admittedly "hyper-technically") claims that it is not demonstrably related to his present confinement because he is not currently challenging this confinement. The greensward of § 2254(a), however, reveals no such hyper-technical pitfall. As we stated in *Sinclair* and reiterated in *Escobedo,* " ' "in custody" for jurisdiction under § 2254(a) does not necessarily mean "in custody for the offense being attacked." ' " *Escobedo,* 655 F.2d at 614 (quoting *Sinclair,* 599 F.2d at 676); *see also Carter v. Procunier,* 755 F.2d 1126, 1129 (5th Cir.1985); *Cappetta v. Wainwright,* 406 F.2d 1238, 1239 (5th Cir. 1969) (citing *Carafas v. La Vallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), and other cases), *cert. denied,* 396 U.S. 846, 90 S.Ct. 55, 24 L.Ed.2d 96 (1969). There is clearly (and admittedly) a positive and demonstrable nexus between Young's current custody and the allegedly unconstitutional conviction sufficient to meet the jurisdictional requirement of § 2254(a).

To further assure that Young's claims were located between the habeas hash-marks, the district court adopted the magistrate's finding that Young is "in custody," because Young "will receive 'credit in some degree' on his current sentence" were the 1963 conviction voided. The state claims that, even in this regard, Young's petition did not demonstrate a positive relationship under *Sinclair;* Young introduced no "evidence" to demonstrate the likelihood of his earlier release, and the magistrate improperly "engaged in a series of perplexing and illogical presumptions and assumptions" to reach a conclusion that credit would ensue "based solely on the magistrate's reading of the Texas laws governing parole." The state's argument again runs out of bounds of the applicable law.

*Sinclair,* in which the Board of Pardons failed to grant *clemency,* explicitly distinguished *Cappetta v. Wainwright,* because

of the subjective judgment of the Board's determination. *Sinclair,* 599 F.2d at 676. In *Cappetta,* the petitioner challenged a fully-served (Dade) conviction although in custody on another (Hillsborough) conviction, which commenced upon expiration of the Dade sentence.

> [A] successful attack on the Dade sentence will result in his release under the Hillsborough sentence, *presumably though unstated,* because of some Florida law allowing credit under the circumstances or because of the wording of the Hillsborough sentence. That sentence is not a part of the record and was apparently not before the District Court. Appellant cites no Florida or other authority providing such a form of credit.... We hold that the court has jurisdiction ... *to determine whether the relationship,* as claimed, between the present confinement and the Dade County judgment is such as *would result in the appellant receiving credit in some degree* on the Hillsborough sentence if he should prevail on the merits of his petition.

406 F.2d at 1239 (emphasis added). Contrary to the state's interpretation of *Sinclair, Cappetta* instructs that, when a petitioner *alleges* credit, the court has jurisdiction over the petition *to determine* whether credit would be provided, even if the petitioner has cited to no authority or law that would demonstrate an earlier release. Relief is not "speculative and remote," *Diehl v. Wainwright,* 423 F.2d 1108, 1109 (5th Cir.1970) (also distinguishing *Cappetta* ), but sufficiently likely to require consideration of credit and of the merits, *see Sammons v. Rodgers,* 785 F.2d 1343 (5th Cir. 1986). The magistrate properly covered the turf of Texas parole.

■ The magistrate's determination that, according to Texas parole procedures, Young will receive credit "in some degree" if he succeeds on the merits of his petition is not clearly erroneous. Jurisdiction therefore lies to entertain the habeas peti-

(Stevens, J., concurring) (procedural default is a "matter of equitable discretion rather than a question of statutory authority; ..."); 28 U.S.C. § 2254 Rule 9(b) Advisory Committee Note

("The bar set up by subdivision (b) [permitting dismissal of successive petitions] is not one of rigid application, but rather is within the discretion of the courts on a case-by-case basis.").

tion, *see Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973), and the case is not moot, *see Carter,* 755 F.2d at 1130 (citing *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). Notwithstanding, the state would require Young or the magistrate to perform the impracticable or impossible, *viz.,* to determine the precise degree of credit Young would receive. *See generally* Jasuta, *Time Credits and Related Problems,* 49 Tex.Bar J. 954 (Oct. 1986) (describing the byzantine intricacies of Texas parole procedures). It would be manifestly unfair to require, for Young or any other habeas petitioner to obtain review, that the magistrate determine with certainty that the petitioner's custody would be reduced, once the magistrate has determined that a *prima facie* case exists for obtaining some degree of credit. The state is the only party in a position to demonstrate conclusively that the petitioner would obtain no relief. The state cannot be prejudiced except by its own failure to place such information before our judicial purview, and thus will not be heard to complain of its nonstrategic formation.

### III.  Illegal Motion

The state contends that a joint application of *Escobedo* and *Moran v. Estelle,* 607 F.2d 1140 (5th Cir.1979), somehow will prevent the state from asserting that Young's failure to object contemporaneously in 1976 to enhancement of his sentence by the 1963 conviction bars consideration of an anticipated subsequent petition challenging the 1976 conviction. Because the procedural default doctrine of *Sykes* allegedly could be asserted were Young to challenge enhancement in the instant petition, *Sykes* should be extended orthogonally to block consideration of this present, putatively piecemeal petition, which does not confront the unobjected-to enhancement.

But even here, the state is improperly in motion before the snap and meritlessly attempts to raise concerns that are not even remotely at issue at this time. The state challenges a petition that does not allege enhancement and not the hypothetical petition that might. Thus, the state would have us deny Young relief not just from enhancement, but also from the improper parole classification, relief to which Young is clearly entitled if his claims are meritorious. This elimination of an existing remedy cannot be sanctioned under Rule 9(b)[3] or any principle of comity. As we stated in *Escobedo,* the " 'mere possibility of success in additional ... proceedings does not bar federal consideration of the claim.' "  650 F.2d at 74 (quoting *Galtieri v. Wainwright,* 582 F.2d 348, 354 n. 12 (5th Cir.1978) (en banc)). Procedural default might be applicable were Young eventually to challenge the enhancement, but it cannot appropriately be injected into this petition.

In the event that Young brings a subsequent petition, the state may then assert its contemporaneous objection rule. We pretermit any decision on the application of procedural default until such a rematch occurs on our judicial schedule. We therefore have no occasion to consider Young's additional response that *Hill v. State,* 633 S.W.2d 520 (Tex.Crim.App.1981), altered the applicable law of *Smith v. State,* 486 S.W.2d 374 (Tex.Crim.App.1972), and that there did not exist a contemporaneous objection requirement in 1976 on which Young could have defaulted. We also express no opinion concerning the exhaustion of state remedies for Young's subsequent petition.

### IV.  Adequate Preparation and Training

Citing *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Joyner v. King,* 786 F.2d 1317 (5th Cir.1986), *cert. denied sub nom. Joyner v. Phelps,* —— U.S. ——, 107

---

**3.**  28 U.S.C. § 2254 Rule 9(b) states: "A second or successive petition may be dismissed if ... the failure of the petitioner to assert [new] grounds in a prior petition constituted an abuse of the writ.").

S.Ct. 653, 93 L.Ed.2d 708 (1986); *Rodriguez v. McKaskle,* 724 F.2d 463 (5th Cir. 1984), *cert. denied sub nom. Rodriguez v. Procunier,* 469 U.S. 1039, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984); *Brown v. Estelle,* 701 F.2d 494 (5th Cir.1983); *Burns v. Estelle,* 695 F.2d 847 (5th Cir.1983); and *Winfree v. Maggio,* 664 F.2d 550 (5th Cir.1981), the state contends that Young's current petition alleges new facts or legal theories not presented to the state courts and, therefore, his petition should be dismissed for failing to exhaust state remedies. As we stated in *Joyner:*

> In *Brown* ... we held that when a claim in a significantly different and stronger evidentiary posture than it was before the state courts is filed in federal court, the exhaustion doctrine required, nonetheless, further proceedings in state court.... In *Burns,* we held that a state habeas petitioner who presented in federal court entirely new evidence of his claim of ineffective assistance of counsel had failed to satisfy the exhaustion requirement.... Joyner's new factual allegations include several items of evidence.... [W]e are unwilling to depart from a settled rule to accomodate new factual allegations in support of a previously asserted legal theory, even though these factual allegations came into existence after state habeas relief had been denied.

786 F.2d at 1319–20.

Although the state invokes a valid theory of exhaustion, the state mischaracterizes this petition as having raised "new facts" before the district court. Young had alleged in his state habeas petition and hearing the relevant facts of his potential alibi defense in relation to the voluntariness of his guilty plea and the effective assistance of his counsel, which we discuss below.

■ The magistrate correctly found that "all crucial factual allegations were before the state courts at the time they ruled on the merits of Petitioner's state application for writ of habeas corpus." We therefore dismiss the state's final, feeble effort to avoid substantive consideration by arguing exhaustion. "Concluding as we do that the alleged 'new facts' are not new at all, we cannot see how our consideration of these same facts in any way undercuts the state court, or creates any friction between the state and federal judicial systems." *Vela v. Estelle,* 708 F.2d 954, 960 (5th Cir.1983), *cert. denied sub nom. McKaskle v. Vela,* 464 U.S. 1053, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984).

## V. The Substantive Conflict and § 2254(d)

Drawing directly from and supplementing the state habeas court's factfinding in 1979, the magistrate proposed several findings of fact. Young entered his guilty plea in 1963 after having been in jail for six weeks and after negotiating the agreement on his own. Young had only an eighth grade education at the time of his plea, did not understand his right to counsel, and pled guilty because he erroneously believed that his probation had been revoked. Young thought that he would serve greater time if he pled *not* guilty, *even if he were acquitted,* than if he pled guilty. He pled in exchange for the state's recommendation of a concurrent sentence. Young understood fully neither the charges against him nor the consequences of his guilty plea. Finally, Young's plea was not supported by *any* evidence.

■ Young's counsel, appointed on the date that Young pled, did not discuss the facts of the case with Young or with the prosecuting attorney, and did not conduct an independent investigation. Counsel did not inquire into any potential defenses that Young might assert, including Young's alibi defense, did not know the strength of the state's case nor Young's chances of success, and did not provide Young with an understanding of how the law applied to the facts of his case. Counsel would not have advised Young to plead guilty had he known that the probation had not been revoked. As a result of Young's own misunderstandings and of counsel's failure to correct them, Young did not make a knowing and voluntary, or informed and conscious, choice to plead guilty.

The magistrate thus proposed six conclusions of law, including that Young's plea

was neither knowing nor voluntary; that Young was deprived of effective assistance of counsel; and that Young's conviction was constitutionally invalid. The district court adopted the magistrate's findings of fact, and granted Young relief. The district court reasoned that, because

> Young had already been confined in jail for six weeks at the time he entered his plea, it appears likely that he was discouraged from seeking a trial on the burglary charge, when it was his perception that he would already be serving a two year sentence for his previous conviction. The magistrate, in fact, found that Young erroneously thought he would receive a longer sentence if he pleaded not guilty than if he pleaded guilty.... There is a strong probability that Young would have insisted on a trial in 1963, if he had been informed of the effect of a plea of not guilty and of his ability to challenge his revocation of probation.

The state does not dispute the district court's factfinding, but argues that an additional fact, found by the state habeas judge, precludes the conclusion that Young's counsel was ineffective: "Prior to pleading Petitioner guilty, Petitioner told his attorney that he had committed the offense charged." Because of this fact, the state believes that the district court failed to accord the presumption of correctness to the state court's factual findings required under 28 U.S.C. § 2254(d).[4] *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The state again fumbles its argument, because this fact does not conflict with the magistrate's findings. Nevertheless, we must vacate the district court's legal determination, because the district court may have impermissibly relied upon the alibi defense in determining prejudicial ineffective assistance of counsel.

To be successful in a claim of ineffective assistance of counsel in regard to a guilty plea, a petitioner must show not only that his counsel's performance was deficient, but also that the deficient conduct prejudiced him. *Hill v. Lockhart,* 474 U.S. 52, ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985) (applying *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Prejudice is demonstrated by showing that the plea process would have been affected had petitioner received adequate counsel. *Id.* The different outcome cannot merely be a "better" plea, but that petitioner "would not have have pleaded guilty and would have insisted on going to trial." *Id.; see Craker v. McCotter,* 805 F.2d 538, 542 (5th Cir.1986). Further,

> where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than to go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a predication whether the evidence likely would have changed the outcome of the trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Hill,* 474 U.S. at —— – ——, 106 S.Ct. at 370–71; *see Brown v. Butler,* 811 F.2d 938, 942 (5th Cir.1987).

In the instant case, the district court held that the conduct of Young's counsel was constitutionally deficient because of counsel's failure to undertake *any* investigation

---

**4.** 28 U.S.C. § 2254(d) provides: "In any proceeding instituted in Federal court by an application for a writ of habeas corpus ... a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit" that any of eight enumerated defects in the state court factfinding procedures occurred.

of the case, to interview the client, to evaluate the state's evidence, to insure that Young understood the nature and elements of the offense, and to determine whether any defenses existed. *Citing Gaines v. Hopper,* 575 F.2d 1147, 1150 (5th Cir.1978); *Baty v. Balkcom,* 661 F.2d 391, 395 (5th Cir.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). The district court found it likely that counsel would have advised Young differently had he investigated the alibi defense. But for these failures, the district court determined, there would be a strong probability that Young would have gone to trial.

■ However, the district court did not make any finding that, if the ineffective assistance upon which relief was granted was the failure to investigate exculpatory evidence or to assert affirmative defenses, Young might have succeeded at trial or might have obtained other significant relief from his having gone to trial than from his having entered a guilty plea. Similarly, it is not self-evident that going to trial would have altered the outcome of Young's parole revocation. We thus do not know on which ground or grounds the district court found prejudice from the alleged ineffective assistance of counsel. To the extent that the district court granted relief based upon the likelihood of success of the alibi defense, however, the district court's decision was improper.

■ The state court found that Young had told his attorney that he committed the offense charged, even though they did not discuss the facts of Young's case. The magistrate and district court found that Young did not understand the charges against him. Thus, Young implicitly could not have known whether or not he committed the offense *regardless* of what he admitted. Notwithstanding, the attorney's conduct could not be deficient for failing to pursue the alibi defense. Given Young's statement, the attorney could only believe that he would suborn perjury were he to permit the alibi to be asserted. *See Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Although Young may be perfectly honest in asserting at this time that he did not commit the offense, we are precluded by § 2254(d) from disregarding such an admission to his attorney. *See id.* at ——, 106 S.Ct. at 1002–03 (Blackmun, J., concurring).

A harder question is presented by the district court's potential reliance on the failure of counsel to investigate the status of parole. The state court found that Young's counsel "assumed from what petitioner told him that such probation had already been revoked at the time the plea of guilty was entered...." Normally, Young would not be able to claim that his attorney was deficient for relying on information that Young supplied. *See, e.g., Johnson v. Cabana,* 805 F.2d 579, 581–82 (5th Cir.1986). Here, however, Young's testimony in the state court indicates that Young likely was misled deliberately by the prosecuting attorneys to induce his plea.[5]

---

5. Young testified as follows at the state habeas hearing:

Q. So an Assistant County Attorney talked to you about entering a plea of guilty on this charge. He told you or led you to believe, or you understood from what he said, that your probation had already been revoked in this cause, in this previous cause [the six-week earlier plea]?
A. That was the understanding on our first discussion around the end of January or the first of February, 1963, that he gave me. He told me if I did not plead guilty to 27,530, that I would be, my probation in 27,302, since it had already been revoked, I would go to the penitentiary. The Case No. 27,530 would be pigeonholed and when I did my time, completed serving my sentence in 27,302, that I would be returned to Grayson County jail to answer charges in Case No. 27,530.

....

Q. And then what happened after that?
A. I went back to six tank of Grayson County jail, which I had been transferred to from five tank when they got an opening. I thought about it for awhile. I wanted—I figured the quickest way to get out of the penitentiary was to go on and take the case 27,530 so I agreed—I wrote a note to the Assistant District Attorney and told him that I wanted to talk to him and upon the second discussion, which was some time in February, prior to February 16, 1963, we agreed upon a two-year plea of guilty in 27,530 to run concurrently with 27,302.
Q. So effectively it was represented to you if you entered a plea of guilty, you wouldn't serve any more time than you had to anyway on your

The district court did not make a factual finding that Young deliberately was misled. We have yet to address whether an attorney has a duty to make a reasonable effort to discover prosecutorial misconduct employed against his or her client, and perhaps such a matter is better addressed by use of the supervisory powers over the federal courts and of fourteenth amendment due process restrictions in the state courts. On remand, the district court should consider whether the prosecution deliberately misled Young, and, if so, whether Young's plea more properly should be vacated for violating his fourteenth amendment rights rather than for violating his sixth amendment rights.

VI. The Final Score

Because we do not know on which basis or bases the district court found prejudice from Young's ineffective assistance of counsel, we must remand for the district court to clarify its factual findings and legal conclusions. This will assist in determining whether counsel's conduct in fact was deficient. The district court also should determine whether, based upon the facts found and independent of any alleged ineffective assistance of counsel, Young's plea was unknowing and involuntary under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The district court should directly address whether the facts found by the state habeas court, that petitioner admitted in the trial court that he was acting freely and voluntarily and that the standard practice of the trial judge was not to accept pleas without oral stipulations, preclude this allegation. Finally, if the district court again determines that Young is entitled to relief from his 1963 conviction, it should provide a reasonable opportunity for the state to retry Young, if the state so desires. These determinations should occur as rapidly as possible and without further, unnecessary procedural gamesmanship.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

probation, but if you didn't enter the plea of guilty, that then it would be hanging over your head the full time during your sentence and you would have to be bench warranted back once you finished your sentence and still not be eligible for parole. Is that correct?
A. That is correct.