IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 89-4883

HOSEY B. JOHNSON,

Petitioner-Appellant,

versus

EDWARD HARGETT, SUPERINTENDENT,
MISSISSIPPI STATE PENITENTIARY,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

(November 17, 1992)

Before BROWN, SMITH, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant Hosey B. Johnson filed this habeas corpus petition, his second in federal district court, alleging (1) prosecutorial misconduct for failure to comply with a discovery request, and (2) ineffective assistance of his prior federal habeas counsel for failing to raise the prosecutorial misconduct claim in Johnson's first federal habeas petition. The district court dismissed Johnson's second habeas petition as an abuse of the writ. Johnson timely appealed, claiming that his prior federal habeas counsel's ineffectiveness excuses the failure to raise the

prosecutorial misconduct claim in the first federal habeas petition.  We disagree and, for the reasons set forth below, affirm the district court.

## I.  BACKGROUND

In 1981, a Mississippi jury convicted Johnson of armed robbery.  His first prosecution ended in a mistrial.  In the second trial, as in the first, Johnson took the stand and testified that he had been convicted previously of "armed robbery."  In truth, he had never been tried for or convicted of that crime; he had merely acquiesced in the revocation of his parole following an arrest for armed robbery.[1]  Evidence of the nature of a parole violation would have been inadmissible under Mississippi law.[2]  But because Johnson's trial counsel had not obtained a copy of Johnson's arrest and conviction record (his so-called "rap sheet")--despite having made an express discovery request for it--counsel did not know that Johnson was mistaken about his prior criminal history and thus could not have known that such erroneous testimony was

---

[1]Throughout the protracted history of this case the crime allegedly committed by Johnson while on parole has been variously referred to as armed robbery, strong armed robbery, strong arm robbery, strong-arm robbery, and robbery by assault.  Our search of Mississippi law has discovered only the crime of robbery with a deadly weapon.  See Miss. Code Ann. 97-3-79 (Supp. 1991).  Because the formal designation of this alleged crime makes no difference to this case's resolution, however, we refer to it throughout as simply "armed robbery."

[2]Mississippi law prohibits inquiry into the nature of a parole violation.  Johnson v. Cabana (Johnson I), 805 F.2d 579, 582 (5th Cir. 1986) (Wisdom, J., dissenting).  Thus, in this case, potentially prejudicial, excludable evidence was put before the jury.  See id.

inadmissible.  Johnson did testify truthfully that he had been convicted of aggravated assault, possession of marijuana, and contributing to the delinquency of a minor.

After Johnson's conviction, his trial counsel obtained the rap sheet and discovered that Johnson had never been convicted of armed robbery.  Nevertheless, trial counsel did not argue prosecutorial misconduct, under Brady v. Maryland,[3] on direct appeal to the Mississippi Supreme Court, which affirmed Johnson's conviction.[4]

After the Mississippi Supreme Court denied his motion for leave to proceed in error coram nobis, Johnson filed a pro se petition for writ of habeas corpus in federal court.  The district court appointed new counsel to represent Johnson.  In this habeas petition Johnson alleged that his trial counsel had been ineffective for failing to obtain the rap sheet--but, as on direct appeal, never raised prosecutorial misconduct. After an evidentiary hearing, the district court denied this petition, and a divided panel of this court affirmed the district court's denial of relief.[5]  Finally, in his petition for rehearing, Johnson asserted that the panel opinion did not address the prosecutor's affirmative duty to produce his rap sheet--a claim never before raised, either in district court

---

[3]373 U.S. 83 (1963).

[4]Johnson v. State, 416 So.2d 679 (Miss. 1982), overruled on other grounds, 487 So.2d 213, 216 (Miss. 1986).

[5]Johnson I, 805 F.2d at 579.

3

or before this court on appeal.  Nonetheless, the rehearing motion was denied.

In May of 1987, Johnson filed a pro se petition with the Mississippi Supreme Court to vacate his conviction under Mississippi's Post-Conviction Collateral Relief Act raising the claim of prosecutorial misconduct for failure to produce his rap sheet.  In July of 1987, the Mississippi Supreme Court denied Johnson's petition without opinion.

In November of 1987, Johnson filed the instant habeas petition, his second, alleging (1) prosecutorial misconduct for failure to comply with the discovery request for his rap sheet, and (2) denial of right to counsel at a pretrial lineup.[6]  The district court held that Johnson's second petition constituted an abuse of the writ and that, because Johnson had been represented by counsel in his prior federal habeas proceeding, his new petition was barred by Rule 9(b) of the Rules Governing Habeas Corpus Cases for failure to bring a claim that could have been asserted in a prior federal habeas petition.[7]

_____

[6]The Magistrate Judge recommended that the district court dismiss Johnson's claim for denial of counsel in a pretrial lineup for failure to exhaust state remedies.  In response to the Magistrate Judge's recommendation, Johnson expressly waived this claim.

[7]28 U.S.C. § 2254 Rule 9(b) (1988).  Rule 9(b) provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds

4

On appeal of the denial of Johnson's second petition, this court vacated the district court's order of dismissal and remanded the case to the district court.[8] We found that the district court had erred in failing to give notice to Johnson that it was considering dismissal under Rule 9(b) and in failing to give him an opportunity to respond.

On remand, the Magistrate Judge notified Johnson that dismissal under Rule 9(b) was being considered. The Magistrate Judge afforded Johnson an opportunity to respond by providing him with Model Form #9 promulgated for use in section 2254 cases involving a Rule 9 issue. The form directed Johnson to explain why his successive petition should not be dismissed under Rule 9(b).

After considering Johnson's response to Form #9, the Magistrate Judge assumed without finding that Johnson's second habeas petition presented a new claim under Rule 9(b), but determined, citing Jones v. Estelle,[9] that Johnson had not provided a justifiable excuse for failing to raise the prosecutorial misconduct claim earlier. Objecting to the Magistrate Judge's recommendation, Johnson argued that his prior federal habeas counsel was ineffective for failing to argue the prosecutorial misconduct claim in his first federal

in a prior petition constituted an abuse of the writ.

[8]Johnson v. Puckett (Johnson II), 860 F.2d 436 (5th Cir. 1988).

[9]722 F.2d 159 (5th Cir. 1983) (en banc), cert. denied sub nom. Jones v. McKaskle, 466 U.S. 976 (1984).

5

habeas petition.

The district court accepted the Magistrate Judge's recommendation, and, in its order dismissing the petition, noted that Johnson had argued ineffective assistance of prior federal habeas counsel in response to the Magistrate Judge's recommendation. The district court summarily dismissed Johnson's argument. Citing Johnson's admission that the prosecutorial misconduct claim existed at the time of trial, the district court dismissed the petition under Rule 9(b) as an abuse of the writ because Johnson failed to explain why he could not have raised the issue of prosecutorial misconduct in his first federal habeas petition. Further, the district court, citing Judge Wisdom's dissent in Johnson I, noted, in the alternative, that Johnson's prosecutorial misconduct claim may have been considered and rejected in his first federal habeas petition.

Within the time allowed for filing a notice of appeal, Johnson filed a motion seeking a writ of mandamus, which a panel of this court construed as a notice of appeal.

## II. ANALYSIS

In this appeal Johnson asserts that the reason his Brady claim was not included in his first habeas petition is that his counsel on first habeas was ineffective. As a result, argues Johnson, the first-time presentation of his Brady claim in this, his second federal habeas petition, could not be an abuse of the writ. He bases his claim of ineffective assis-

6

tance of prior federal habeas counsel on the contention that a competent habeas counsel would have raised the issue of prosecutorial misconduct in Johnson's first federal habeas petition. For purposes of this case, we assume without deciding that the rap sheet withheld from Johnson was in fact Brady material.

After we heard this appeal, the Supreme Court held, in McCleskey v. Zant,[10] that the standard for determining whether a habeas petitioner has abused the writ is the same as that used to decide whether a petitioner's state procedural default should be excused. Under McCleskey, if the government has met its burden of pleading abuse of the writ,[11] a petitioner bringing a new claim in a successive or second habeas petition must either show (1) both "cause" for not having raised the claim earlier and "actual prejudice resulting from the errors of which he complains," or, failing that, (2) that "a constitutional violation probably has resulted in the conviction of one innocent of the crime."[12]

We find that Johnson cannot demonstrate cause for his failure to present his Brady claim in his first habeas petition. "In order to demonstrate cause, the petitioner must

---

[10]113 L.Ed.2d 517 (1991).

[11]Id. at 533.

[12]Id. at 544-45. "A court need not consider whether there is actual prejudice to the petitioner when he fails to show cause." Sawyer v. Whitley, 945 F.2d 812, 816 (5th Cir. 1991), affirmed 1992 U.S. LEXIS 3864.

show that the failure to raise the claim in his first petition was due to some objective external factor such as interference by officials."[13]   In the context of claims that have been defaulted in state court because of a violation of procedural rules--defaults to which the identical "cause and prejudice" test applies--the Supreme Court has held that "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."[14]   Thus, ineffective assistance of counsel will constitute cause only when counsel is constitutionally required under the Sixth Amendment.  But because there is no constitutional right to counsel in federal habeas,[15] under McCleskey, no error by counsel in an habeas proceeding can constitute cause.[16]  In summary, therefore, even if Johnson's first federal habeas counsel were found to have been ineffective, that cannot be cause, under McCleskey, for

---

[13]Sawyer, 945 F.2d at 816, quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).

[14]Coleman v. Thompson, 115 L.Ed.2d 640, 672 (1991); see also Murray, 477 U.S. at 488 ("So long as defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [466 U.S. 668 (1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in procedural default.").

[15]Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").  See also Wright v. West, 1992 U.S. LEXIS 3689, at 22 ("[C]onstitution guarantees no right to counsel on habeas."); Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992) (inmate's pro se status not an external factor preventing claim in prior habeas petitions).

[16]Accord Harris v. Vasquez, 949 F.2d 1497, 1514 (9th Cir. 1990) (claiming ineffectiveness of federal habeas counsel).

Johnson's failure to raise the <u>Brady</u> claim in the first round of federal habeas.

Having failed to establish cause for his default, Johnson may nevertheless have his <u>Brady</u> claim considered in this second federal habeas petition if he can show that "a constitutional violation probably has caused the conviction of one innocent of the crime."[17] The Supreme Court has made clear that the term "actual innocence" means <u>factual</u>, as opposed to <u>legal</u>, innocence--"legal" innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas "actual" innocence, as the Court stated in <u>McCleskey</u>, means that the person did not commit the crime.[18]

<u>McCleskey</u>'s discussion of the narrow actual innocence exception derives from the plurality's discussion of actual innocence in <u>Kuhlmann v. Wilson</u>.[19] <u>Kuhlmann</u>, in turn, describes actual innocence as meaning that there is a fair probability that, in light of all the evidence, a reasonable trier could not find all the elements necessary to convict the

---

[17]<u>McCleskey</u>, 113 L.Ed.2d at 545.

[18]<u>See</u> <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986) (petitioner must show colorable claim of factual innocence even though evidence of guilt may have been unlawfully admitted); <u>McCleskey</u>, 113 L.Ed.2d at 550 (petitioner cannot demonstrate alleged <u>Massiah</u> violation caused conviction of innocent person); <u>Dugger v. Adams</u>, 489 U.S. 401, 412, n. 6 (1989) (actual innocence requires more than showing of constitutional error, even when verdict would have been different absent error).

[19]477 U.S. 436 (1986).

defendant of that particular crime.[20]   Thus, under this
standard, Johnson would actually be innocent of the crime for
which he was charged and convicted--armed robbery as defined
under Mississippi law--if the jury could not have reasonably
found that he was armed when he committed the robbery.[21]

Here, we cannot find that a reasonable jury could not
have found that Johnson committed armed robbery, even had
Johnson's erroneous testimony about his prior armed robbery
conviction been excluded.  Johnson testified that he received

---

[20]Kuhlmann, 477 U.S. at 455, n. 17, cited in Sawyer, 1992 U.S.
LEXIS at 13, n. 5.

[21]The concept of "innocence of the crime" means that the consti-
tutional violation resulted in the conviction of one who was
innocent of the particular crime for which he or she was charged
and convicted--not that the petitioner was not present at the
scene of the offense.  Kuhlmann's key language is largely a quote
from Judge Friendly's article advocating an actual innocence
requirement in habeas:

> A prisoner does not make a colorable showing of innocence
> "by showing that he might not, or even would not, have been
> convicted in the absence of evidence claimed to have been
> unconstitutionally obtained."  Rather, the prisoner must
> "show a fair probability that, in light of all the evidence,
> including that alleged to have been illegally admitted (with
> due regard to any unreliability of it) and evidence tenably
> claimed to have been wrongly excluded or to have become
> available only after the trial, the trier of the facts would
> have entertained a reasonable doubt of his guilt."  Thus,
> the question whether the prisoner can make the requisite
> showing must be determined by reference to all probative
> evidence of guilt or innocence.

91 L.Ed.2d at 381 n. 17 (internal citations omitted; emphasis in
original), citing Judge Friendly, Is Innocence Irrelevant?
Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142,
160 (1970).  This seems to us to be akin to the standard in
Jackson v. Virginia, 443 U.S. 307 (1979), under which a person
cannot be guilty of a crime if a reasonable jury would entertain
a reasonable doubt about any element of the crime.

10

the stolen automatic teller cards from a friend. This statement conflicts, however, with the victim's identification of Johnson and testimony that Johnson approached and robbed him of his wallet at gunpoint. Thus, even in the total absence of Johnson's erroneous testimony of a prior conviction for armed robbery, the eyewitness testimony of Johnson's use of a gun is more than sufficient to enable a reasonable jury to return a guilty verdict of armed robbery.

### III. CONCLUSION

We find that the district court correctly determined that Rule 9(b) bars consideration of Johnson's claim of prosecutorial misconduct raised for the first time in this, his second, federal habeas petition because that claim could have been raised previously. Ineffective assistance of first habeas counsel cannot be "cause" for Johnson's failure to assert prosecutorial misconduct in his first habeas petition as there is no constitutional right to counsel in habeas. Neither do we find that Johnson has a claim of actual innocence, which, if established, would allow us to address the merits of Johnson's new claim of prosecutorial misconduct. Even absent the erroneous evidence of Johnson's prior conviction for armed robbery, a reasonable jury could have based a verdict of armed robbery under Mississippi law on the victim's testimony that Johnson was armed when he committed the robbery. If true, the acts ascribed to the state prosecutor--deliberate use of false inculpatory testimony from this undereducated defendant,

11

represented by appointed counsel whose ignorance of the error of his client's inculpatory testimony resulted from the prosecutor's purposeful withholding of discoverable evidence-- would probably constitute good cause for reversal. Neverthe-less, for Johnson to raise that issue for the first time in his second habeas corpus petition is an abuse of the writ under the circumstances of this case. Therefore, the judgment of the district court denying Johnson's petition is AFFIRMED.


JOHN R. BROWN, Circuit Judge, dissenting.


Despite the exhaustive opinion of Judge Wiener, I cannot believe that under the guidance of the Supreme Court the law has gotten to the point where federal courts in habeas proceedings can be denied the opportunity to hear and decide whether three distinct, now unquestioned, constitutional errors resulted in a sentence for life.

The frustrations of Tantalus pale in comparison to the exasperation Hosey Johnson must have felt as, time and again, his Sisyphean pleas fell on unhearing (or at least unlisten-ing) ears, a result of the shortcomings of those charged with seeing to it that Johnson received fairness under our system of justice. As his odyssey through the state and federal courts unfolds below, a picture emerges of step after inept step, fostered by hypertechnicalities, producing a series of

12

hollow "days in court," devoid of real substance, never considering the merits of Johnson's facially meritorious claims.

The central undisputed fact is that twice--first in a mistrial and then in a full trial--Johnson was permitted to prejudice himself by his own self-condemning but mistaken testimony solely because his trial counsel twice did not bother to follow through on his own discovery request and because the prosecutor twice sat mute during Johnson's mistaken testimony, knowing full well that he (the prosecutor) had withheld discoverable information the delivery of which would have prevented Johnson's own self-destructive testimony. That such an injustice was allowed to happen in the first place is bad enough; that repeated efforts to have such improprieties repudiated and expunged through direct and collateral appeals only to be frustrated procedurally--most recently as an "abuse of the writ"--cries out for correction.

Johnson erroneously testified during his trial that he had been convicted of strong armed robbery. The misconduct of the prosecutor in failing to deliver Johnson's rap sheet to trial counsel might well have affected the jury's verdict on the guilt-innocence issue, and, even more likely, could have affected the jury's decision to assess life imprisonment.

I would REVERSE the judgment of the district court dismissing Johnson's second habeas petition, and REMAND this case for such action as the court would then direct.

I, therefore, dissent.