**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2092
_____

BALDEV SINGH, AKA Balden Singh,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(A063-062-910)
Immigration Judge: Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 14, 2021

Before: AMBRO, KRAUSE, and PHIPPS, *Circuit Judges*.

(Filed: January 25, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

Through an arranged marriage, Baldev Singh, a native and citizen of India, wed his cousin in India in 2011. The bride, a United States citizen residing in Pennsylvania, traveled to India for the wedding and returned to the United States about a month afterwards. After completing immigration paperwork, Singh obtained an immigrant visa and entered the United States as a lawful permanent resident three years later.

Upon Singh's arrival, the honeymoon was over. He alleges that his wife and her extended family required him to work fifteen hours a day without pay at a family-operated gas station and that he was otherwise unfed and locked in his room without his cellphone. Singh further claims that he was physically and mentally abused by his wife and extended family in several different ways – including the fact that he survived only by eating potato chips from the gas station. Nonetheless, Singh obtained and installed a hidden camera at the gas station to observe an affair that his wife was having with her sister's husband. When Singh confronted his wife, accusing her of an affair and a prior fake marriage, she and her sister's husband threatened to kill him. They also threatened Singh and his family members in India because he refused to arrange for his sister to marry into their extended family.

But there is more to the story. In 2016, Singh was convicted in the Berks County Court of Common Pleas of several crimes: robbery, sexual assault, intimidation of witnesses or victims, issuing terroristic threats, stalking, and two counts of simple assault.

Based on those convictions, the Department of Homeland Security began removal proceedings. In a hearing before an Immigration Judge, Singh averred that he would be

killed by his wife's extended family if he returned to India. At the time of the hearing, however, he had not spoken with any of the people who threatened him for approximately five years, and he did not know their whereabouts. Nonetheless, based on those threats, Singh sought deferral of removal under the Convention against Torture ("CAT").

The Immigration Judge denied Singh's CAT deferral request and ordered his removal. To qualify for CAT deferral, a petitioner must first establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (setting the standard for CAT withholding); *see also id.* § 1208.17(a) (applying the CAT withholding standard to CAT deferral). And here, the Immigration Judge determined that Singh failed to establish such a likelihood of torture in India. Several facts led to that conclusion: Singh had never been tortured in India before; the police in India are not entirely ineffective; the people whom Singh fears are in the United States; and the threats that Singh reported occurred several years ago, and Singh has not been harmed in the meantime. Ultimately, the Immigration Judge explained that "[r]eceiving a threatening call or his family receiving a threatening call falls far short of torture and also falls far short of the more likely than not standard." IJ Decision at 5 (AR69).

To dispute that ruling, Singh appealed to the Board of Immigration Appeals. The BIA adopted many of the Immigration Judge's findings and dismissed the appeal because Singh did not prove the likelihood of future torture needed for CAT deferral.

Singh timely petitioned this Court for review of that final order, arguing that the BIA committed several errors. In exercising jurisdiction over his petition, *see* 8 U.S.C. § 1252(a)(1), we review Singh's factual challenges to the BIA's decision (as well as the referenced or incorporated portions of the Immigration Judge's decision) for substantial evidence. *See Martinez v. Att'y Gen.*, 978 F.3d 860, 871 n.11 (3d Cir. 2020). Under that standard, in the context of claims for CAT relief, once an agency considers "all evidence relevant to the possibility of future torture," 8 C.F.R. § 1208.16(c)(3); *see also id.* § 1208.17(a) (incorporating the standard for CAT deferral), its "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).

Singh challenges the BIA's conclusion that, more likely than not, he would not be tortured upon return to India. He argues first that the Immigration Judge and BIA failed to consider evidence of his past torture, which may bear on the likelihood of future torture, *see* 8 C.F.R. § 1208.16(c)(3)(i). Specifically, he claims that both decisions ignored evidence of the abuse and threats he received from his wife and her extended family while in the United States. The administrative record does not reveal such dereliction. The Immigration Judge expressly considered this evidence, and after also finding that Singh was never tortured in India, the Immigration Judge concluded that Singh did not meet his burden of showing a likelihood of future torture. On administrative appeal, the BIA similarly accounted for that same evidence. Thus, the administrative record disproves Singh's claim of failed consideration of past torture.

4

Singh also argues that the BIA ignored his evidence that Indian authorities would acquiesce to any torture that he would experience. But that acquiescence argument is immaterial due to the BIA's finding that he would not likely be tortured in India. Even still, the only evidence he presented of gross, flagrant, or mass human rights violations, *see* 8 C.F.R. § 1208.16(c)(3)(iii), was the State Department's 2018 Human Rights Report for India. The BIA accounted for the report expressly and found that it did not stand for the proposition that Singh advocated. Rather, the BIA endorsed the Immigration Judge's conclusion that "the evidence indicates that Indian police, albeit imperfectly, address criminality in India and punish officials who engage in corruption." BIA Decision at 3 (AR5) (citing IJ Decision at 5–6 (AR69–70)).

Finally, Singh contends that the agency failed to account for his testimony regarding his inability to reasonably and safely relocate within different regions of India, *see* 8 C.F.R. § 1208.16(c)(3)(ii). But Singh overlooks the BIA's conclusion that, more likely than not, he would not be tortured anywhere in India. That finding makes unnecessary the region-by-region analysis that Singh claims is missing. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

In sum, because Singh did not establish a likelihood of future torture, he does not qualify for CAT deferral, and we will therefore deny his petition.