**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Justo FARIAS, Defendant-Appellant.**

**Nos. 71–2814, 71–2886.**

United States Court of Appeals, Fifth Circuit.

April 28, 1972.

Samuel S. Forman, Miami, Fla. (Court Appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., George A. Kokus, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before TUTTLE, GEWIN and THORNBERRY, Circuit Judges.

TUTTLE, Circuit Judge:

These are combined appeals from sentences of 14 and 18 years, respectively, to run concurrently, following pleas of guilty by Farias to one count each of two-multi-count indictments for violating the Federal Narcotics Laws. The only ground of appeal, which we consider of significance, raises an important issue which, unfortunately, for the appellant, has been decided on records that are not substantially distinguishable from the one before us, contrary to the contention of the appellant.

Farias was represented by the office of the public defender in Miami, Florida. He elected to change his plea of not guilty to a plea of guilty to one count of each indictment. The trial court, speaking to the accused, through an interpreter, sought to make clear that Farias had been fully informed as to the possible maximum and minimum sentences that the court might mete out to him in the event of the court's accepting such a plea. It is clear from the colloquy, that Farias understood that he could be sentenced to a maximum of 20 or a minimum of 5 years on these two charges. Having satisfied himself that the decision to enter the plea was voluntary, the trial court accepted the plea

and, subsequently, another judge fixed the sentences as indicated.

Within a few days, the office of the public defender filed a motion to be relieved of representation of the accused, stating that Farias had inquired as to possible probation and *for the first time* counsel learned that, under the particular sections of the code under which Farias had been convicted, the length of the sentences was mandatory and there was no parole possible.

It was not disputed that the trial court did not mention, in its discussion with Farias, the fact that whatever sentence was meted out to him would not be subject to a subsequent shortening by the granting of parole, as is possible under substantially all but the narcotic law convictions. Moreover, the record before us indicates that the accused's counsel was not herself aware of this important distinction in the case of narcotics convictions.

The question has previously arisen in this circuit—whether the failure of the trial court to inform an accused upon tendering a plea of guilty of his inability to obtain consideration for parole, is one of the "consequences" of the plea that is required to be explained to an accused before such plea can be accepted by the court under the provisions of Rule 11, Federal Rules of Criminal Procedure.[1]

In, Trujillo v. United States, 5 Cir., 1967, 377 F.2d 266, cert. den. 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 this court first held that the trial court is not required to inform the defendant of ineligibility for parole, for it is not a "consequence of a plea of guilty . . . ., rather it is a consequence of the withholding of legislative grace."

In subsequent cases this court has felt itself bound by its *Trujillo* decision to arrive at the same result, although in one, Sanchez v. United States, 5 Cir., 1967, 417 F.2d 494, recognizing that several other circuits had joined the growing list in opposition to our *Trujillo* rule, stated:

"Were the question of parole ineligibility before this Court for the first time, the considerable appeal of these recent decisions might persuade us to a like position. However, in Trujillo v. United States, supra, and by implication in Dorrough v. United States, 5 Cir. 1967, 385 F.2d 887, 897, cert. den. 1969, 394 U.S. 1019, 89 S.Ct. 1637, 23 L.Ed.2d 44 this Court rejected the argument that parole ineligibility is a consequence of a guilty plea within the meaning of Rule 11. We are bound by that result . . . ."

Subsequently, another panel of this court had before it a somewhat similar question in Spradley v. United States, 5 Cir., 1970, 421 F.2d 1043. In the *Spradley* case this court reversed a judgment of the trial court refusing to vacate a sentence based on a guilty plea where the accused had not been informed of his ineligibility for parole, but the case permitted a distinction from *Trujillo* because in the *Spradley* case the trial court mistakenly misinformed the accused, in effect telling him that he could look forward to the possibility of parole after having served one-third of his sentence. However, in discussing the law dealing with the requirements of Rule 11 we construed our previous *Sanchez* opinion as strongly suggesting that that panel

---

1. Rule 11. Pleas.

A defendant may plead not guilty, guilty or with the [stated] consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty, unless it is satisfied that there is a factual basis for the plea.

did not consider *Trujillo* the better view. We said:

"The language and reasoning used by this court in Sanchez, supra, strongly suggests that the Sanchez panel did not consider Trujillo the better view, however binding."

We then proceeded to state, after pointing out the difference in the cicumstances in *Spradley:*

"We conclude that the rule announced by this court in Trujillo ought not to be extended beyond the bare facts of that case."

Since the decision in the *Spradley* case, additional Courts of Appeals in other circuits have taken their stand in opposition to our *Trujillo* case. See Bye v. United States, 2d Cir., 1970, 435 F.2d 177, and Harris v. United States, 6 Cir., 426 F.2d 99. Thus it is that this court and the Court of Appeals for the District of Columbia appear to be the only two of the nine circuits that have adhered to our view of this particular issue, the other seven aligning themselves with the view that the failure of the trial court to tell a defendant tendering a guilty plea of his ineligibility for parole amounts to a failure adequately to tell him of the "consequences" of the plea.

As we have indicated above, this court is bound by the decision in *Trujillo,* which ruling can be modified only by an en banc decision of the court. While we agree with what was said in both *Sanchez* and *Spradley* that we think the prevailing view is the better, we conclude that we must affirm the judgment of the trial court based on the *Trujillo* decision.

The judgment is affirmed.

GEWIN, Circuit Judge (concurring specially):

I concur in the result reached by the majority opinion, but I believe the result is not as harsh as the opinion of my brother Tuttle indicates. The record clearly demonstrates to me that the trial judge meticulously complied with the requirements of Rule 11 F.R.Crim.P.

While it is true that one of the attorneys who appeared in behalf of Farias filed a motion stating that she was not aware that parole was *not* possible at the time the guilty plea was entered, that fact does not reveal the *total* picture presented by the record. When inquiry was made as to who represented Farias, Mr. Peter Koste responded "Public Defender, Peter Koste, the assistant Public Defender, and Mrs. Sorrentino, my associate." As a matter of fact Mr. Koste took the lead throughout the court's interrogation and inquiry as to whether the plea was made voluntarily with understanding of the nature of the charge and the consequences of the plea. Mrs. Sorrentino responded to two or three questions only.

Apparently there had been a conference and a thorough understanding by all concerned as to the disposition of the cases. Farias was indicted under two multi-count indictments. Mr. Koste made it plain to the court that Farias was pleading guilty to count three of one indictment and count nine of the other with the understanding that the government would then dismiss the numerous other pending counts. True to this understanding, after the plea was entered, the government dismissed a large number of counts with the consent of the court. It was not until after Farias received the benefit of this arrangement that any question as to parole arose.[1]

An examination of the motion filed is somewhat revealing. Mr. Koste did not join in the motion. The motion was filed solely by Mrs. Sorrentino and it purports to be a statement of her understanding or lack of understanding—not that of Mr. Koste. She refers to herself only as the "undersigned counsel" and makes no assertion that Mr. Koste was unaware of ineligibility for parole. As in-

---

1. This type of conduct is appearing in this court with increasing frequency. A defendant receives the benefit of dismissals and then claims he was misled, mistreated or otherwise abused by his own counsel, the U. S. Attorney, or the presiding Judge.

dicated earlier, Mrs. Sorrentino was described as "associate" counsel.[2]

Moreover, in addition to assurances from Mr. Koste and the defendant Farias that Mr. Koste had fully advised Farias as to all related matters, the court cautiously interrogated Farias in the presence of his counsel. The court specifically asked Farias whether he was aware that the court could impose a sentence of 20 years "confinement" and a fine of $20,000 or both. Farias answered in the affirmative and stated he had discussed that question with his lawyer. In another question the court asked Farias, "Is there anything about this charge that you do not understand and that you would like to inquire about at this time?" Farias replied, "No, I do not have anything to add." In addition the court was assured by Farias and his counsel that there had been no promise of leniency or special treatment of any kind other than the dismissal of other counts of the indictments. The court interrogated Farias as to whether he realized he was waiving a jury trial; that he was presumed to be innocent and that the burden was on the government to prove to the jury that he was guilty beyond a reasonable doubt; that he had the right to call witnesses in his behalf with the assistance of the court in order that he could confront and cross-examine any witnesses who appeared. Farias answered that he understood all of the foregoing. After Farias and his counsel had been thoroughly examined by the court, a special agent of the Bureau of Narcotics and Dangerous Drugs testified to the facts, without objection.

This is not a simple case of a relatively minor narcotics violation. As a matter of fact bail was initially fixed at $100,000 in each case. Bail pending appeal was fixed at the sum of $250,000. The record discloses a serious narcotics violation. Farias was given sentences far below the maximum authorized by statute.

2. At oral argument the Government asserted that Mr. Koste was widely experienced in the criminal law and had served as an assistant U. S. Attorney.

This assertion was not contradicted. The Government argues that Mr. Koste was well informed as to the law in cases of this kind.