**John Thomas CZERE, III, Petitioner–Appellant,**

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents–Appellees.**

No. 86–3400.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1987.

---

**60**

Lawrence M. Lehmann, Midlo, Lehmann, Norman & Rihner, New Orleans, La., for petitioner-appellant.

William Campbell, New Orleans, La., for respondents-appellees.

Before GARZA, WILLIAMS, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

In this 28 U.S.C. § 2254 proceeding, John Thomas Czere, III, a state prisoner in Louisiana, argues that the district court erred in refusing to set aside his state conviction, based on his guilty pleas, of two counts of second degree murder. Czere asserts that he entered these pleas in reliance on misinformation from his counsel regarding his parole eligibility date. We affirm the district court's denial of Czere's petition for the writ of habeas corpus because the district court's finding that Czere failed to prove by a preponderance of the evidence that he was prejudiced by the asserted misinformation is not clearly erroneous.

**Facts and Proceedings Below**

On May 30, 1978, the sixteen-year-old Czere ran away from his family's home in Florida and headed west. Ten days later he was stopped in Colorado for exceeding the speed limit. He was driving a car that had been in the possession of a Louisiana couple found murdered in their home several days earlier. Czere also had in his possession credit cards belonging to the couple. He was returned to Louisiana where, on June 21, 1978, a Louisiana grand jury indicted him on two counts of first degree murder and, in a separate indictment, one count of armed robbery arising from his alleged robbery of the couple before murdering them. While Czere was in jail awaiting trial, he pulled a homemade knife on a guard in an unsuccessful attempt to escape. Consequently, the state also charged Czere with aggravated escape.

According to a polygraph examiner's report of examination of Czere which is in the record, Czere reported that the Louisiana couple had assisted him when his car broke down just inside Louisiana. They tried to help him find a necessary car part and also helped him attempt to summon a wrecker. When these efforts were fruitless, they urged Czere to spend the night with them; he then forced them at gunpoint to lie on the floor and shot them both. Czere then took the keys to their car and drove on toward Colorado.

An attorney from the St. Tammany Parish Indigent Defenders Office, John Williams, represented Czere. Williams' investigation did not uncover any promising defense. Czere had an eleventh grade education and was of above average intelligence. The medical assessment of Czere was that he had not been insane at the time of the murders and was fully competent to stand trial. Apparently Williams' foremost hope was that Czere's relative youth—he was seventeen by then—would weigh heavily and prompt the Louisiana Supreme Court to vacate any death sentence.

On July 27, 1979, more than a year after Czere's arrest and with trial set in a month, the state offered a plea bargain for the first time. The state would permit Czere to plead guilty to two counts of *second* degree murder instead of murder in the first degree as charged in the indictment, and in exchange for the pleas also would drop the armed robbery and aggravated escape charges. At the evidentiary hearings conducted by the magistrate and, later, by the district judge, Williams and Czere's father testified that they had considered this a highly desirable bargain. Czere risked the death penalty if the jury convicted him of first degree murder, La. Rev.Stat.Ann. 14:30 (West 1986); death was not an available punishment for second degree murder. *Id.* 14:30.1.[1] Williams and Czere's father urged Czere to accept the state's offer.

On or about July 29, 1979, Czere decided to plead guilty to second degree murder.

To this point he had never asked Williams about his eligibility for parole, and did not do so for two more days. On July 30, the day before Czere was to enter his guilty pleas, Williams brought him a copy of Louisiana's second degree murder statute. Czere's receipt of the statute is evidenced by his signature on it. The second of the statute's two brief paragraphs stated: "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of probation or suspension of sentence and shall not be eligible for parole for forty years." La.Rev.Stat. 14:30.1.[2]

At the evidentiary hearings, Czere claimed that this paragraph raised a question in his mind about parole because he had formed the view—based on conversations with fellow inmates—that he would be eligible for parole in fifteen years. The next day, before entering his guilty pleas, he asked Williams when he would be eligible for parole. This is the point where the parties' versions diverge.

The proper answer to Czere's query would have been eighty years, because the sentences on the two counts were consecutive. Czere and his father claim that Williams then told them he would be eligible for parole in twelve to fifteen years. Williams admitted discussing parole with Czere but denied telling him twelve to fifteen years. Williams testified that although he had not told Czere eighty years in so many words, he had explained that

---

**1.** The state's offer to drop the armed robbery and aggravated escape charges was also attractive. Armed robbery is a nonparolable offense with a potential punishment ranging from five to ninety-nine years' imprisonment. La.Rev. Stat.Ann. 14:64 (West 1986). Czere's chances of receiving a pardon on his two counts of second degree murder—a parolable offense—were superior to his chances of receiving a pardon for convictions of armed robbery and first degree murder—which, like armed robbery, is a nonparolable offense—and aggravated escape, La. Rev.Stat.Ann. 14:110 (West 1986) (aggravated escape apparently is parolable, but the five-to-ten-year penalty cannot be concurrent with any other sentence). *Cf. State ex rel. Turner v. Maggio,* 463 So.2d 1304, 1307 (La.1985) (noting that an armed robbery sentence would harm defendant's chances of receiving gubernatorial commutation and subsequent parole of life term for

murder). The first degree murder statute "does not exclude executive pardon," *State v. Sawyer,* 422 So.2d 95, 104 (La.1982), *judgment vacated,* 463 U.S. 1223, 103 S.Ct. 3567, 77 L.Ed.2d 1407 (1983), *on remand,* 442 So.2d 1136 (La.1984), *cert. denied,* 466 S.Ct. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984). Apparently, however, gubernatorial pardons for first degree murder are exceedingly rare. *See State v. Glass,* 455 So.2d 659, 667 (La.1984) (quoting testimony from former director of Louisiana Coalition of Jails and Prisons), *cert. denied,* 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985).

**2.** In 1979, the Louisiana legislature amended the second degree murder statute to remove altogether the possibility of parole. La.Rev.Stat. Ann. 14:30.1 (historical comment) (West 1986).

Czere would have to serve forty years on each count before becoming eligible, and that the terms were consecutive. The written plea agreement, though it makes no reference to parole, specifically states that the two life sentences were "to run consecutive." Likewise, the state trial judge, although he said nothing about parole, advised Czere, before accepting his pleas, that the two life sentences "are to run consecutively," and Czere acknowledged that he understood this.

Czere pleaded guilty to two counts of second degree murder and was sentenced to consecutive life terms. Czere apparently did not appeal, but about two years after entering his pleas he filed for post-conviction relief in the state convicting court. On October 7, 1981, that court denied relief in a brief order stating in part, "The Court, having considered ... the affidavit of the petitioner's court-appointed attorney, determines that petitioner's guilty plea was knowingly and voluntarily made with full knowledge of the consequences." Without comment, the Louisiana Supreme Court also denied Czere post-conviction relief.

The affidavit to which the state court referred was one executed on October 2, 1981, by defense counsel Williams in response to Czere's state petition for post-conviction relief. In the affidavit, Williams stated, "[T]he defendant was specifically apprised that he had no opportunity for parole until forty years had elapsed."

Having exhausted his state remedies, on October 4, 1982, Czere filed for post-conviction relief under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Louisiana. The magistrate held an evidentiary hearing at which Czere, his father, and Williams testified. Williams testified that his October 2, 1981 affidavit was prepared in haste and that contrary to it, he had made clear to Czere that he would not be eligible for parole for

eighty years, though he had not explicitly stated this. The magistrate credited Williams' testimony over his affidavit, and over the version offered by Czere and his father, and recommended that the district court deny the petition.

Thereafter, the district court conducted its own evidentiary hearing at which essentially the same testimony was presented. The court accepted the magistrate's *recommendation* but found that Williams had not "specifically informed" Czere "that the law made him ineligible for parole for eighty years." The district court found instead that Williams provided the second degree murder statute, which stated that persons convicted of second degree murder were not eligible for parole for forty years.

The district court's findings do not themselves explicitly state what Williams told Czere. However, it is evident by the court's several references to Czere's possession of the statute that the court found that Czere knew he would not be eligible for parole for at least forty years. Although to the extent this suggested that Czere would be eligible for parole in forty years it was "erroneous advice," as the district court put it, nevertheless by finding that Czere knew of a forty-year period, the court implicitly rejected Czere's claim that Williams had told him twelve to fifteen years. The magistrate and the state court also had rejected Czere's version. The district court's finding that Czere was informed that he would not be eligible for parole for forty years is not clearly erroneous. It is consistent with Williams' 1981 affidavit, as well as Williams' testimony at the evidentiary hearings, that he told Czere he would have to serve forty years on each count.[3] The question is whether Czere's guilty plea, entered after his counsel provided him this incorrect information,[4] must be set aside.

---

**3.** Williams offered an explanation for why Czere may have believed that he could be paroled in twelve to fifteen years. Williams claimed to have told Czere that by serving twelve to fifteen years without disruptions he might be an attractive candidate for a *pardon.*

**4.** For purposes of this opinion we assume, without deciding, that, in the circumstances here, informing Czere of his eligibility for parole in forty years on each count was properly found by the district court to be tantamount to informing him that he could be eligible for parole on both counts within forty years.

## Discussion

We initially note that there is no evidence, nor any claim, that either the prosecution or the state trial judge ever misled either Czere or his counsel, and there is no evidence or claim of any breach of the plea agreement or that anything about parole was a part of it. The United States Constitution does not "require[ ] the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). *See also Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir.1986). Czere's case, however, is predicated on a claim of ineffective assistance of counsel.

■ "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 106 S.Ct. at 370; *see also Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.1986), *cert. denied*, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986); *United States v. Fuller*, 769 F.2d 1095, 1098 (5th Cir.1985). Under *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Czere must show both that his counsel's performance in misadvising him of the parole consequences of his plea

"fell below an objective standard of reasonableness," *id.* 104 S.Ct. at 2064, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 2068. In other words, Czere had the burden of proof and persuasion to establish that it was in fact reasonably probable that but for the misadvice he "would not have pleaded guilty and would have insisted on going to trial." *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987). *See also Young v. Lynaugh*, 821 F.2d 1133, 1140–41 (5th Cir.1987).

■ The Supreme Court emphasized that this two-part Sixth Amendment inquiry need proceed in no particular order. *Strickland*, 104 S.Ct. at 2069. Because we conclude that Czere has not shown the requisite prejudice,[5] we need not decide whether Williams' misadvice fell short of "an objective standard of reasonableness." *See Hill*, 106 S.Ct. at 371.[6]

■ In this case, Czere raised the issue of prejudice in his petition by stating that his guilty plea was made "[i]n reliance upon these assurances of counsel," referring to Williams' alleged statement that

5. There is a narrow category of cases, not relevant here, in which prejudice is presumed. *Strickland*, 104 S.Ct. at 2067.

6. Apparently this Court has never decided whether erroneous advice by counsel regarding parole eligibility amounts to ineffective assistance. *See Smith v. McCotter*, 786 F.2d at 704 n. 4. A defendant may receive ineffective assistance, rendering his guilty plea involuntary, if his attorney grossly overstates the severity of the sentence that is risked by going to trial. *See, e.g., Cooks v. United States*, 461 F.2d 530 (5th Cir.1972); *United States v. Rumery*, 698 F.2d 764 (5th Cir.1983); *Kennedy v. Maggio*, 725 F.2d 269, 273 (5th Cir.1984) ("It is elementary that a plea entered in reliance on the defendant's attorney's patently erroneous statement of the law in relation to the facts" cannot be voluntary due to the attorney's ineffectiveness). Parole, however, is a collateral consequence of the plea, *Trujillo v. United States*, 377 F.2d 266 (5th Cir.1967), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967), while the sentence is a direct consequence.

Although the trial court that accepts the guilty plea is not obligated to inform the defendant of

the parole consequences of the plea, *see Hill*, 106 S.Ct. at 369; *United States v. Garcia*, 636 F.2d 122 (5th Cir.1981); *United States v. Farias*, 459 F.2d 738 (5th Cir.1972); *Trujillo, supra*, nevertheless, at least in the federal system under Fed.R.Crim.P. 32(d), if the trial court provides the defendant information regarding parole eligibility that is materially incorrect, the defendant may be entitled to withdraw his plea on voluntariness grounds. *Spradley v. United States*, 421 F.2d 1043 (5th Cir.1970).

Even if the Sixth Amendment does not impose on counsel an affirmative obligation to inform clients of the parole consequences of their pleas, and we doubt that it does (at least absent some special factors), other courts have recognized a distinction between failure to inform and giving misinformation, as we assume occurred here. *See Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979) (misinformation of parole consequences is ineffective assistance of counsel); *O'Tuel v. Osborne*, 706 F.2d 498 (4th Cir.1983); *Cepulonis v. Ponte*, 699 F.2d 573, 577 (1st Cir.1983) (commenting that counsel's *"mis*information [regarding parole eligibility] may be more vulnerable to constitutional challenge than mere lack of information").

parole would be available in twelve to fifteen years.

The district court reasoned that because Czere had decided to plead guilty on or about July 29, 1979—before Williams' dispensed his "erroneous advice"—the misinformation did not prejudice him. This is not wholly persuasive because Czere had not yet formally entered his plea bargain at the time Williams misinformed him. If parole eligibility had been important to him, he still theoretically had time to change his mind.

This possibly questionable aspect of the district court's specific rationale for denying relief does not, however, assail the essence of the court's findings, which is that parole did not matter very much to Czere at the time of his pleas. Czere never asked about parole until after Williams gave him the second degree murder statute the day before he entered his pleas. Even then, according to the district court's findings, Czere never specifically asked for an explanation of the parole term as outlined in the statute. The record supports the district court's view that parole was a very fringe concern at the time Czere entered his pleas. Czere's paramount concern, and the concern of his father and Williams, was to avoid the death penalty. It may be noted that Czere "does not maintain ... that he is innocent of the charges in the indictment, or that a plausible defense to those charges exist[ed]." *United States v. Sutton,* 794 F.2d 1415, 1422 (9th Cir.1986).

Czere's testimony at the evidentiary hearings was that he would have considered the difference between twelve to fifteen years in prison and eighty years as very significant. However, this testimony is beside the point in light of the district court's finding that Williams had told Czere that he would be in prison at least forty years. Czere never testified that the difference between forty and eighty years in prison would have been enough to prompt him to risk exposure to the electric chair. As mentioned, Czere's father, who advised him as he made his decision to plead, testified that he was quite concerned about the death penalty, as was Williams.

Czere testified that he was not very concerned, but the district court's questions at the evidentiary hearing reveal its skepticism of Czere's claimed nonchalance.

It is not our role to assume the existence of prejudice. Regardless of how plausible a showing of prejudice *might* be, *Strickland* requires that the petitioner "affirmatively prove" prejudice. 104 S.Ct. at 2067. *See Smith,* 786 F.2d at 703; *Bonvillain v. Blackburn,* 780 F.2d 1248, 1253 (5th Cir.), *cert. denied,* 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986). This is an essentially factual inquiry. Czere's *factual* claim—as made in his petition and by his testimony—was that in pleading guilty he relied on Williams' advice that he would be eligible for parole in no more than fifteen years. This claim was rejected by the district court, which by clear implication found, on more than adequate evidence, that Williams had *not* so advised Czere. The district court was not required to credit Czere's testimony. It found, again on wholly adequate evidence, that Czere had made up his mind to plead guilty before receiving Williams' advice about parole. Czere, however, asserted that Williams told him the statute did *not* require him to serve forty years, but that he would be eligible in twelve to fifteen years, which Czere claimed confirmed what fellow inmates had told him. But if Czere had been seriously concerned about parole, and had believed he could be paroled in twelve to fifteen years, then advice, which the district court impliedly found was given, that he could not be eligible for parole for at least forty years would have been profoundly shocking to him, and, by his own testimony, he would have refused to plead guilty. Thus, the finding that Czere was advised that forty years were required, but nevertheless pleaded guilty, throws strong doubt on his testimony that parole was an important consideration to him respecting his decision to plead guilty. We cannot say that the district court was clearly erroneous in determining that Czere had not established, as it was his burden to do, that it was in fact actually reasonably probable that, but for Williams' erroneous forty-year advice,

he would not have pleaded guilty but would have insisted on going to trial.

**Conclusion**

Because the district court's finding that Czere failed to establish that he was prejudiced by his attorney's error in providing incorrect parole information is not clearly erroneous, we affirm the denial of Czere's petition for the writ of habeas corpus.

AFFIRMED.