NO. 07-00-0575-CR
NO. 07-00-0576-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 30, 2004

_____

OLLIE GRAY CHAMPION, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY;

NOS. 841383 and 841382; HONORABLE MICHAEL WILKINSON, JUDGE

_____

Before JOHNSON, C.J., REAVIS, J., and BOYD, S.J.[1]

This will be our fourth opportunity to address the companion appeals brought by

appellant Ollie Gray Champion.[2] In the appeals, he challenges his conviction, after an open

plea of guilty, on two counts of aggravated sexual assault. His challenges are premised

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

[2]Our prior opinions are *Champion v. State*, No. 07-00-575-CR (Tex.App.–Amarillo February 20, 2001, no pet.); *Champion v. State*, No. 07-00-575-CR (Tex.App.–Amarillo October 4, 2001, no pet.); and *Champion v. State*, 82 S.W.3d 79 (Tex.App.–Amarillo 2002, no pet.).

on claims that he was deprived of the effective assistance of counsel and his pleas were not made knowingly and intelligently because his trial counsel misled him as to the range of punishment attached to the offenses. Disagreeing that reversal is required, we affirm the judgments of the trial court.

As a result of an investigation of several sexual assaults involving the same victim, in January 2000, appellant gave police a statement in which he admitted committing two offenses. In April 2000, he was charged with the two counts of aggravated sexual assault. He was represented in both cases by retained counsel.

Appellant pled guilty to both charges without an agreement as to punishment. In the course of his pleas, he made a judicial confession and executed a waiver of his rights to jury trials or to confront or cross-examine witnesses. In each case, he also executed a waiver of his right to appeal. The trial court accepted the pleas, found appellant guilty, and ordered the preparation of a pre-sentence investigation report. *See* Tex. Code Crim. Proc. Ann. art. 42.12 § 9 (Vernon Supp. 2004). At the hearing on the report, appellant presented testimony and exhibits. The trial court assessed appellant's punishment in each case at 35 years confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine.

On November 2, 2000, appellant filed pro se motions for new trial and notices of appeal in each case. In his pleadings, he sought to challenge the voluntariness of his plea, the punishment assessed and the effectiveness of his trial counsel. He also filed an affidavit of indigence and requested the appointment of appellate counsel. In his motions

2

for new trial, he asserted he was not properly informed as to his waiver of rights and his pleas were induced by his attorney's representations that he would receive probation. However, because the motions were not presented to the trial court as required by Texas Rule of Appellate Procedure 21.6, no hearing was held and it was overruled by operation of law. Tex. R. App. P. 21.8(c).

In a February 21, 2001 opinion, we abated the appeals for the appointment of counsel on appeal. In June 2001, appellant's first appellate counsel submitted an *Anders*[3] brief in which he certified that there were no meritorious issues on which to predicate an appeal. He also sought leave to withdraw from the case. Appellant filed a pro se brief in which he advanced several grounds asserting he was entitled to a hearing on his motions for new trial. In our second opinion, issued on October 4, 2001, we found the factual and procedural posture of the cases mirrored those discussed in *Prudhomme v. State*, 28 S.W.3d 114 (Tex. App.–Texarkana 2000, no pet.). In that case, the court held the filing of a motion for new trial to be a critical stage implicating the constitutional right to the effective assistance of counsel. In that opinion, we abated the appeals for the appointment of new appellate counsel to consider and argue any grounds that might support the appeals.

Appellant's second appellate counsel filed a brief in January 2002, arguing appellant was entitled to a hearing on his motions for new trial as a necessary prerequisite to preserving appellant's claim that his guilty pleas were not made knowingly and voluntarily. We agreed and, in a third opinion issued on April 16, 2002, again abated the appeals to the

---

[3] *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

3

trial court to conduct a hearing on appellant's motions for new trial. *Champion*, 82 S.W.3d at 83-84.

Such a hearing was conducted by the trial court on September 23, 2002, and the record has been supplemented with a reporter's record of the hearing. The trial court also appointed attorney Ted Doebbler on appeal. On January 13, 2003, we reinstated the appeals. After appointed counsel missed two deadlines set by us for filing an appellate brief, appellant sought dismissal of the appointed counsel. We overruled appellant's motion and extended the time for filing an appellate brief, which resulted in Doebbler filing an *Anders* brief. However, because that brief did not comply with the applicable Rules of Appellate Procedure, appellate counsel was instructed to submit a corrected brief. We denied appellant's motion to dismiss his appellate counsel. In August 2003, having received no corrected brief from appellate counsel, we granted appellant permission to file a pro se brief and reiterated appellate counsel's obligation to file a corrected brief. On August 26, 2003, appellant filed a pro se brief in which he asserted seven points of error. He has since filed three "supplemental briefs" in which he raised additional issues. Appellate counsel has filed a second brief in which he again posits the record does not show reversible error. The State has now filed a brief in which it challenges the trial court's jurisdiction to conduct the new trial hearing, as well as appellant's supplemental briefs.

Appellant's nine points of error present two core issues. In his first six points, as well as his ninth point, he argues he did not receive the effective assistance of counsel mandated by the federal constitution. In each point, he alleges a separate theory why his trial counsel's performance was deficient. In his remaining points, he challenges the

4

accuracy of the record. In his seventh point, he particularly assigns error to the admission of affidavits at the hearing on his motion for new trial. In his eighth point, appellant argues he is entitled to a new trial because exhibits that should have been included in the record were "lost."

In its brief, the State initially argues the trial court had no jurisdiction to conduct a new trial hearing and we should not consider the evidence presented at that hearing. It also contends appellant has failed to show his counsel's performance was deficient or that he suffered any prejudice. The State challenges appellant's eighth and ninth points on the ground that his supplemental briefs did not properly present those issues for our consideration.

We must first determine if appellant's pleas of guilty or his assertions to the trial court at trial that he was satisfied with his representation preclude him from raising any of the issues presented in his briefs. In *Young v. State*, 8 S.W.3d 656 (Tex. Crim. App. 2000), the court held "a valid plea of guilty or *nolo contendere* 'waives' or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error." *Id.* at 667. The grounds offered by appellant in support of his ineffective assistance of counsel claims include a challenge to the validity of his pleas because his trial counsel failed to notify him of a plea bargain offered by the State, and further, that his counsel assured him he would receive probation. He also includes a claim of deficient counsel performance at the punishment hearing. Inasmuch as appellant challenges the validity of his guilty pleas and counsel's representation after that plea, his

5

claims are not waived by the plea, nor are they waived by his statement regarding his representation up to his guilty plea.[4]

We next address the State's argument that we may not consider the evidence taken at the September 2002 hearing on appellant's motions for new trial. The State bases that argument on the provision in Rule of Appellate Procedure 21.8 requiring a ruling on a motion for new trial within 75 days after a sentence is imposed. However, that argument ignores the constitutional basis of our April 16, 2002 opinion and judgment abating the appeals. Additionally, it represents a collateral attack on that judgment. The cases relied upon by the State either did not involve deprivations of the Sixth Amendment right to counsel in pursuing a motion for new trial, *see e.g.*, *State ex rel. Cobb v. Godfrey,* 739 S.W.2d 47 (Tex. Crim. App. 1987), or held that procedural rules must yield to constitutional rights. *See Trevino v. State*, 565 S.W.2d 938, 941 (Tex. Crim. App. 1978) (conduct of hearing on motion for new trial in absence of defense counsel near the end of the time permitted by rule was "not a permissible alternative"). Moreover, the State failed to challenge our April 16, 2002 judgment within the time allotted by the Rules of Appellate Procedure. It may not do so now.

Because it bears upon our consideration of his remaining points, we next address appellant's eighth point, in which he argues he is entitled to a new trial because the reporter's "records have been lost or destroyed without the appellant's fault." In support

---

[4]Had appellant's guilty pleas been given as part of a plea bargain, he would be precluded from challenging the voluntariness of his plea. *See Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001).

6

of that proposition, he cited Rule of Appellate Procedure 50(e) and the cases interpreting that rule. The State responds that new issues presented in a supplemental brief are "not properly before the trial court for review," citing *Allen v. State*, 795 S.W.2d 15 (Tex. App.–Houston [14th Dist.] 1990, no pet.). In that opinion, the *Allen* court relied upon cases construing 1982 and 1990 Rules of Appellate Procedure and, citing *Rochelle v. State*, 791 S.W.2d 121, 124 (Tex. Crim. App. 1990), held that because the permission of the court had not first been obtained, a point of error raised for the first time in a supplemental brief would not be considered. *Allen v. State,* 795 S.W.2d at 17. However, because the Rules of Appellate Procedure have undergone substantial revisions since 1982, we must look to the present rules.

Rule of Appellate Procedure 38.7 provides "[a] brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." The rule contemplates supplemental briefs may be filed upon leave of the court. Even though appellant did not seek permission to file the supplemental briefs in question, the first two were filed at a time when the State had the opportunity to, and did, respond to the issues raised in those briefs. In the interest of justice, we will consider those particular supplemental briefs. However, appellant submitted a third supplemental brief after the State's brief was filed. We decline to consider the issue raised in that brief.

Appellant's reliance upon Rule of Appellate Procedure 50(e) is misplaced. Current Rule 50 addresses reconsideration of petitions for discretionary review. It appears

appellant is relying on the rules as they were constituted before the 1997 revisions.[5]   The

relevant current rules are 34.5(e) and 34.6(f).  Rule 34.5(e) provides:

> If a filing designated for inclusion in the clerk's record has been lost or
> destroyed, the parties may, by written stipulation, deliver a copy of that item
> to the trial court clerk for inclusion in the clerk's record or a supplement.  If
> the parties cannot agree, the trial court must - on any party's motion or at the
> appellate court's request - determine what constitutes an accurate copy of
> the missing item and order it to be included in the clerk's record or a
> supplement.

Rule 34.6(f) concerns omissions from the reporter's record and provides:

> An appellant is entitled to a new trial under the following circumstances:
>
> (1) if the appellant has timely requested a reporter's record;
>
> (2) if, without the appellant's fault, a significant exhibit or a significant portion
> of the court reporter's notes and records has been lost or destroyed or - if the
> proceedings were electronically recorded - a significant portion of the
> recording has been lost or destroyed or is inaudible;
>
> (3) if the lost, destroyed or inaudible portion of the reporter's record, or the
> lost or destroyed exhibit, is necessary to the appeal's resolution; and
>
> (4) if the lost, destroyed, or inaudible portion of the reporter's record cannot
> be replaced by agreement of the parties, or the lost or destroyed exhibit
> cannot be replaced either by agreement of the parties or with a copy
> determined by the trial court to accurately duplicate with reasonable certainty
> the original exhibit.

The specific items appellant contends are "lost" are 1) the pre-sentence investigation

report (PSI); 2) his written statement to police, 3) his attorney's notes concerning a

telephone conversation mentioning a plea bargain offer from the State, and 4) an affidavit

---

[5]This conclusion is supported by appellant's reference to the "statement of facts"
rather than the "reporter's record" terminology used in the present rules.

of Robert Peacock, Jr., an alleged second victim of an uncharged extraneous offense. The first two items arose in appellant's original sentencing hearing, and the second two concern the hearing on his motion for new trial. Former Rule 50(e) applied to both the clerk's record (transcript) and the reporter's record (statement of facts). However, because the present rule only provides for a new trial when the reporter's record is incomplete due to loss or destruction of records, we will consider appellant's argument as intending to rely on present Rule 34.6(f).

The first requirement of the rule is that appellant make a timely request for the reporter's record. The only request that appears in the clerk's record is a reference in appellant's pro se notices of appeal in which he asserts his indigence and requests that the court "pay for the transcription of the record and all other related papers comprising the record." Although appellant's request did not designate any specific exhibits to be included, *see* Tex. R. App. P. 34.6(f), we will view it as meeting the first requirement of Rule 34.6(f) as to omitted items 1 and 2. The record does not contain a request from appellant for a reporter's record on the motion for new trial hearing, such a record was prepared in compliance with our instructions on abatement.

The second requirement of Rule 34.6(f) is that a "significant exhibit . . . has been lost or destroyed." The rule specifically only refers to an "exhibit." Appellant's allegations that these items were lost is based solely on the fact that they do not appear in the reporter's record. However, none of the items were introduced as exhibits at either hearing, nor were they requested for inclusion in the reporter's record. Moreover, the letter from Robert Peacock, Jr. does appear in the record before us. Appellant's statement to the police is

9

included as an attachment to the affidavit of Kenneth Mingledorff. Parenthetically, appellant's seventh point challenges the admission of this affidavit. Because the items were neither introduced as exhibits at the hearings or specifically requested for inclusion in the record, Rule 34.6(f) is not applicable. Appellant's eighth point is overruled.

Because appellant's seventh point also concerns the propriety of the trial court's admission of evidence at the hearing on the motions for new trial, we will consider it next. Appellant argues the trial court erred in admitting affidavit evidence at the hearing after it had taken live testimony. The affidavits in question were those of appellant's trial attorney, Kenneth Mingledorff (Kenneth), his partner Judy Mingledorff, and their legal assistant Barbara Cox-DeRosa. Kenneth's affidavit recited his activities in representing appellant and authenticated attached documents, including motions filed in the case, appellant's statement to police, and correspondence. The Mingledorffs testified at the hearing and, of course, were subject to cross-examination.

Appellant made two objections to the affidavit at the hearing. The first was non-specific. The second was directed at the affidavit of Cox-DeRosa on the basis that she was not going to testify and thus was not subject to cross-examination. At the conclusion of the hearing, and relying upon Rule 21.7 of the Rules of Appellate Procedure, the trial court admitted all three affidavits. Rule 21 governs motions for new trial in criminal cases and specifically provides that a court "may receive evidence by affidavit or otherwise" at a hearing on a motion for new trial.

10

Appellant argues the word "or" in Rule 21.7 prohibits the trial court from accepting both affidavits and trial testimony. In support, he cites *State v. Brunner*, 917 S.W.2d 103 (Tex. App.–San Antonio 1996, pet. ref'd), and *McVickers v. State*, 874 S.W.2d 662 (Tex. Crim. App. 1993). The State does not respond to this argument.

Both *Brunner* and *McVickers* addressed motions to suppress rather than Rule 21.7 motions for new trial. Neither case supports appellant's position. In *Brunner,* the appellate court held the trial court did not err in granting a motion to suppress, even though no evidence was presented in support of the motion. *Id.* at 105. In *McVickers,* the court was considering a statute that allowed courts to determine suppression motions on the motion itself, "opposing affidavits, or upon oral testimony." *See* Tex. Code Crim. Proc. Ann. art. 28.01 § 1(6) (Vernon 1989). It did not hold that use of the word "or" in the statute made acceptance of one form of evidence required, but precluded the receipt of other forms of evidence. It also held the statute did not make the rules of evidence inapplicable. *McVickers,* 874 S.W.2d at 666. Appellant's seventh point is overruled.

We now turn to appellant's ineffective assistance of counsel claims. The standards by which the effectiveness of counsel are set out in the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by our Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). In order to show trial counsel was ineffective, a claimant must establish two elements: 1) that his counsel's performance was deficient, and 2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The first component is met by showing that trial counsel made errors so significant that he was not functioning as

11

the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.* The second component necessitates a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.*, a trial whose result is reliable. *Id.* A claimant must show that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* In making our review, we must also bear in mind there is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The record must affirmatively show the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The defendant must establish that counsel's errors, judged by the totality of the representation, denied him a fair trial. *Strickland*, 466 U.S. at 695. Additionally, we must also apply the standard for review of rulings on motions for new trial, which is an abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

The first theory appellant advances in support of his ineffective assistance claim is that his trial counsel failed to file a specific motion to suppress his written statement to the police and to press that motion to a ruling. The clerk's record shows that counsel filed a motion to suppress evidence obtained as a result of a "search of the defendant on or about the day of his arrest," but did not seek to suppress the written statement given to police about four months earlier. Appellant argues that suppression of the motion was required because it was obtained in violation of his constitutional rights as set forth in *Miranda v.*

12

*Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as well as article 38.22 of the Code of Criminal Procedure.

Responding, the State cites *Jackson v. State*, 973 S.W.2d 954 (Tex. Crim. App. 1998), for the proposition that in order to meet *Strickland* requirements, appellant is obliged to prove that a motion to suppress would have been granted. *Id.* at 957. It argues the record shows that the statement was given January 6, 2000, and appellant testified that he was not arrested until May 12, 2000; thus, it concludes, appellant was not in custody when the statement was given. That conclusion is also supported by an April 10, 2000 complaint which recites appellant's statement to police and indicates that he had not yet been arrested.

Acknowledging that the *Miranda* procedural protections only apply to custodial interrogations, appellant argues that judged by the standards for determining custody articulated by the Supreme Court, he was "in custody" at the time of the statement. In doing so, he relies upon his affidavit supporting his motions for new trial. In relevant portion, it reads:

> [M]y confession to this crime was coerced by the arresting officers. They told me that if I did not talk to them they would see to it that I got life in prison. I was scared with them constantly hovering over me violating my space. I was afraid they would hurt me so I agreed to write down what Detective Godfrey was 'telling' me to write. I told my lawyer that I was not read my rights before I wrote down what Godfrey [told me . . . .][6] When I asked my lawyer to file some sort of motion to suppress that statement he said he could not do it because there was 'no such thing as a motion to suppress evidence.'

---

[6]A portion of the text on the copy which appears in the record is cut off.

13

In *Shiflet v. State*, 732 S.W.2d 622 (Tex. Crim. App. 1985), the court recognized four general situations that might constitute "custody" within the *Miranda* purview. They are: 1) when the suspect is physically deprived of his freedom of action in any significant way, 2) when a law enforcement officer tells the suspect that he cannot leave, 3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and 4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave. *Id.* at 629. *See also Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

The facts alleged in appellant's affidavit go to the voluntariness of his statement rather than whether he was in custody. The only *Stansbury*[7] circumstance applicable to the facts alleged here is the fourth, in that the statement gave the officers probable cause to arrest. Even so, as we have noted, the record shows the statement was given on January 6, but appellant was not arrested until May 12. This is sufficient to demonstrate that appellant was allowed to leave after the statement.

Appellant had the opportunity to develop the record on this issue at the hearing on the motions for new trial. He failed to do so, testifying only that inconsistencies between his testimony and the statement to the police was because "I was real scared when I wrote that, I wasn't thinking straight." This testimony controverts his claim that the officers dictated the statement to him. Moreover, the fact that his counsel had already filed a

---

[7]*Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

motion to suppress evidence obtained from a search of appellant controverts appellant's affidavit allegation that he said, "there was no such thing (as a motion to suppress)."

At the new trial hearing, Kenneth averred that he did not pursue suppression of appellant's statement because appellant had decided to plead guilty and seek probation. He asserted that had the cases gone to trial, he would have sought to suppress the statement. Appellant has failed to present sufficient evidence to rebut the presumption that his trial counsel's conduct was reasonable and professional. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Appellant's first point is overruled.

In his second point, appellant asserts that Kenneth failed to inform him that the State had offered a plea agreement, and because of this, his representation was ineffective. In support, he cites *Ex parte Wilson*, 724 S.W.2d 72 (Tex. Crim. App. 1987), and *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir. 1986), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986), for the proposition that counsel's failure to inform a defendant of a plea bargain offer denies the defendant effective assistance of counsel. The Court of Criminal Appeals continues to follow its *Wilson* holding. *See Ex parte Lemke,* 13 S.W.3d 791, 798 (Tex. Crim. App. 2000).

At the new trial hearing, appellant testified that Kenneth never told him the State had made an offer of 25 years confinement in exchange for a guilty plea, and he only learned about the offer from reading the PSI report. However, Kenneth testified that his records contained a memo by his legal assistant stating, "Ken wants to talk with him before – Ken wants to talk with Ollie before the next setting. State is offering 25 years." He went on to

15

aver "when I talked with Ollie, he said, I'm not taking any [prison] time, you know. We can – we can get witnesses, da da da. I said Ollie, you know what I said about the trial. He said, I'm not talking about going to trial. I'm talking about [the] PSI hearing."

The evidence was conflicting as to whether Mingledorff informed appellant of the State's offer. The trial court is the factfinder at a new trial hearing and its resolution of conflicts in the evidence requires deference by a reviewing court. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Here, the trial court resolved the conflicting evidence against appellant. We cannot say its resolution was erroneous. Thus, appellant failed to show that trial counsel did not inform him of the State's offer. Appellant's second point is overruled.

Appellant's third point ineffective counsel allegation is premised on the basis that trial counsel guaranteed him that he would receive probation. In support of that proposition, he relies upon *Ex parte Battle*, 817 S.W.2d 81 (Tex. Crim. App. 1991), *Czere v. Butler*, 833 F.2d 59 (5th Cir. 1987), and evidence presented at the new trial hearing.

*Battle* arose out of a habeas corpus hearing in which it was undisputed that the petitioner's plea of nolo contendere was made after counsel informed him he could get probation. *Ex parte Battle,* 817 S.W.2d at 83. In fact, however, Battle was ineligible for probation. Because of that fact, the court held Battle was deprived of reasonably effective assistance of counsel and his conviction was reversed. *Id*. at 84.

*Czere* involved a federal petition for habeas corpus resulting from denial of similar petitions filed in state courts. In order to avoid the death penalty and to obtain the dismissal

16

of other charges, Czere pled guilty to two counts of second degree murder resulting in his being sentenced to two consecutive life terms. The statute applicable made him ineligible for parole until he had served 40 years on each term or a total of 80 years. At an evidentiary hearing, Czere and his father alleged defense counsel told him he would be eligible for parole in 12 to 15 years. The attorney established that he had shown Czere a copy of the "brief" statute providing that those convicted of second degree murder "shall not be eligible for parole for forty years." *Id.* at 61. The attorney also testified that he had informed Czere that the sentences assessed would be consecutive. *Id*. at 62. In its opinion, the Fifth Circuit noted the lower court's fact finding that Czere's counsel had informed him he would not be eligible for parole for 40 years. *Id*. at 64. In its opinion, the *Czere* court found Czere had failed to establish the prejudice prong of *Strickland* because he had never claimed his innocence and the record showed that his primary motivation in making the plea agreement was to avoid the death penalty. It further found that any discrepancy between his actual parole eligibility and the advice of his attorney would not have persuaded him to risk the death penalty at trial. *Id.*

In the present case, appellant testified at the new trial hearing. His testimony as to what his counsel advised him concerning the range of punishment was inconsistent. At various times, he testified that Kenneth told him the range of punishment was from probation to 99 years confinement, and that "if things go right, you'll get your probation." At other times, he averred being informed by counsel that he had to plead guilty to get probation and that "probation was guaranteed."

17

Appellant also presented the testimony of a friend named Belita Bordwine and his former employer, Dan Mallory. Both witnesses had attended his original sentencing hearing and each had spoken briefly with Kenneth concerning the case. Each of them testified that Kenneth informed them, whether explicitly or implicitly, that appellant would be given probation. On cross-examination, the State pointed out portions of Mallory's testimony at the sentencing hearing in which he was asked if he would hire appellant again "if the judge saw fit to place him on some sort of probation or deferred adjudication." Mallory denied that because of the conditional nature of the question, he may have misunderstood it and averred he did not believe he misunderstood Kenneth.

In response to the testimony of Bordwine and Mallory, the State produced affidavits and testimony from the Mingledorffs as well as Cox-DeRosa. With regard to the punishment issue, in his affidavit, Kenneth averred that he informed appellant that the range of punishment was five to 99 years, but that the court could grant deferred adjudication on a guilty plea. He also said he informed appellant of his right to a jury trial and that he did file a motion to suppress. The reason he did not seek suppression of appellant's written statement in the motion was because appellant had already decided to plead guilty and to seek deferred adjudication at the sentencing hearing.

In her affidavit, Judy Mingledorff also stated that appellant was informed of his right to a jury trial and as to the full range of punishment. She said that appellant was also informed that a judge could consider deferred adjudication after a guilty plea. She averred that although appellant's character witnesses were told that probation had been requested, they were never told that appellant would get probation. Further, in Cox-DeRosa's affidavit,

18

she stated that she was on the telephone during some of Kenneth's conversations with appellant in which appellant was told the range of punishment was from five years to life and there was "no guarantee of a deferred adjudication."

Moreover, both Mingledorffs testified at the new trial hearing. Kenneth testified about the extensive communications he had with appellant on the telephone, through letters, and in person. He said appellant expressed concern about the fact that another defendant accused of assaulting the same victim had been assessed a 30-year penal confinement sentence. Kenneth again asserted that he informed appellant the could received up to a 99 year sentence, but that deferred adjudication was a possibility, although "a long shot." He also talked about the importance of preparations for the sentencing hearing and why that was so. On the day of the hearing, Kenneth testified he went over the plea admonishments with appellant and made sure he understood them. He said that after the hearing, he advised appellant of his right to appeal, but that he would have to obtain other counsel to represent him on appeal. He also repeated many of the other facts set out in his affidavit.

After the hearing, the trial court was presented with a clear conflict in the evidence. Resolution of the conflict depended upon determinations of the credibility and demeanor of the witnesses. Consequently, as we have noted, we must afford "almost total deference" to the trial court's resolution of the conflicting evidence. *Kober*, 988 S.W.2d at 233. In addition to the testimony at the new trial hearing, the trial court had before it appellant's October 16, 2000 affidavit supporting his motion for new trial in which he swore he "had a drug and alcohol problem and still [has] losses of memory and head-aches." Under this

19

record, we cannot say that the trial court's resolution against appellant of the conflicting evidence was clearly wrong. That being so, we must hold that appellant failed to establish his trial attorney made any assurance of probation. Thus, the *Battle* rationale is not applicable. Appellant's third point of error is overruled.

In his fourth point, appellant argues his trial counsel was ineffective because he failed to prepare adequately for the sentencing hearing. Specifically, the deficiencies argued are that he failed to read the complainant's statement or view the complainant's videotaped statement. Kenneth testified that he did not view a videotape and was unable to recall if such a tape had been made. There was no discussion concerning any written statement made by the complainant.

In response, the State posits that appellant "failed to establish the complainant even made a videotaped statement." However, the record reveals that the State had filed an affidavit to establish probable cause based upon the videotape. The State's April 10, 2000 complaint incorporated an affidavit by an assistant district attorney that they "witnessed the video taped interview of the complainant, 12 year old N. P." Parenthetically, nothing in the record shows that the complainant made a written statement.

Kenneth testified that it would have been important to review the videotape "if we were going to trial," but he was not sure it was important for the sentencing hearing because he did not want to conduct a lengthy cross-examination of the child at that hearing. He conceded that by not reviewing the tape, he would not know if she had made an inconsistent statement at the hearing. Appellant argues that this failure allowed the

20

complainant to testify to numerous extraneous offenses without objection and prevented counsel from challenging her credibility.

We cannot agree that counsel's failure to conduct an extended cross-examination of the child complainant was not reasonable trial strategy. Counsel could well have concluded that a vigorous cross-examination of the child would have elicited more sympathy for the victim, thereby causing appellant more harm than the possibility of exposing an inconsistency in her testimony would benefit him. Additionally, at a punishment hearing, a trial court is permitted to consider evidence that would not be admissible at the guilt-innocence phase. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2004). Appellant has not met his burden to overcome the presumption that trial counsel furnished him reasonable and professional representation. Appellant's fourth point is overruled.

In his fifth point, appellant makes three additional complaints concerning trial counsel's performance. He argues his counsel was ineffective by failing to object to extraneous offenses mentioned in the PSI report, by failing to seek a continuance of the sentencing hearing, and by failing to make a sufficiently specific objection to hearsay contained in the PSI report.

We will consider appellant's two complaints concerning counsel's asserted failure to object to the PSI report together. Although he does not specifically cite to them, appellant's argument concerning the extraneous offenses and the hearsay evidence are clearly based upon the Rules of Evidence. *See* Tex. R. Evid. 404(b) (extraneous

21

evidence), and 802 (hearsay). He also argues that the failure to object waived any complaint to which he might have been entitled because of the admission of those matters. *See* Tex. R. App. P. 33.1. However, the Court of Criminal Appeals has recently reiterated its view that the rules of evidence do not apply to the contents of a PSI report. *Fryer v. State*, 68 S.W.3d 628, 631 (Tex. Crim. App. 2002). That exception would also include rules pertaining to hearsay. *Brown v. State*, 478 S.W.2d 550, 551 (Tex. Crim. App. 1972). Thus, the objections appellant sought would have been unavailing and counsel's failure to make them would not make his representation ineffective.

Appellant's other argument under this point is directed at trial counsel's failure to seek a continuance. He argues that the record shows Kenneth received the PSI report "no more than 30 minutes prior to the hearing." The record shows that at the sentencing hearing, Kenneth "objects to the fact that [he] received [the PSI report] about 30 minutes" before the hearing and did not have time to "digest all of it." It also reflects that the trial court planned to "recess for a while" before completing the hearing. The court asked counsel if that would provide enough time or if he wanted a continuance. Kenneth responded, "I would rather proceed today." Appellant argues, without citation of relevant authority, that "most attorneys" would have requested the hearing be reset.

At the new trial hearing, Kenneth testified that his reference to "30 minutes" was an "exaggeration." He also thought the court did take a recess, though it was not reflected in the record of the sentencing hearing. He averred that prior to the hearing, appellant told him he wanted to proceed because the witnesses were already present and he agreed with that decision. He also testified that the PSI report did not contain any new or surprising

22

information or allegations. Appellant testified that the Mingledorffs visited with him before the sentencing hearing and told him they had not received the PSI report yet. Appellant "believed" he asked Kenneth if he thought a reset would be in order and Kenneth said no.

The authority and procedure governing PSI reports is article 42.12 § 9 of the Code of Criminal Procedure. In relevant part, it provides:

> (d) Before sentencing a defendant, the judge shall permit the defendant or his counsel to read the presentence report.
>
> (e) The judge shall allow the defendant or his attorney to comment on a presentence investigation . . . report and, with the approval of the judge, introduce testimony or other information alleging a factual inaccuracy in the investigation or report.

Tex. Code Crim. Proc. Ann. art. 42.12 § 9(d) and (e) (Vernon Supp. 2004). This procedure does not contemplate a full evidentiary hearing on a PSI report. For example, although the State has access to the report, the article does not even provide for the State to present evidence establishing its contents. Appellant has not presented any argument showing what additional evidence could have been produced if the hearing had been continued. Absent such a showing, appellant could not meet the harm element required by *Strickland*. Moreover, at the new trial hearing, the court was presented with conflicting evidence concerning whether appellant expressed a wish to proceed with the hearing or to have it reset. The record before us does not support a holding that the trial court's evident resolution of that question against appellant was in error. We overrule appellant's fifth point.

23

In his sixth point, appellant complains of Kenneth's failure to object to the State's closing argument based upon the PSI report when the report had not been received into evidence. Citing *Stiles v. State*, 927 S.W.2d 723, 733 (Tex. App.–Waco 1996, no pet.), he asserts the prosecutor's argument was subject to objection because it was outside the evidence. The State responds with a two-fold argument. First, it argues, the PSI report was properly before the court by statutory provision. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(d) (Vernon Supp. 2004). Second, it contends, the report was treated by both the court and the parties as though it had been admitted into evidence and should be considered as admitted. *See Vargas v. State,* 838 S.W.2d 552, 559 (Tex. Crim. App. 1992) (Baird, J., dissenting).

Article 37.07, section 3(d) provides that when a judge assesses punishment, he may order a PSI report by virtue of article 42.12 and, "after considering the report, and after hearing of the evidence . . . he shall forthwith announce his sentence in open court." The State is correct that the statute supports its argument that the report was properly before the court and could be incorporated in the State's closing argument. Moreover, the discussion in *Stiles* and related cases concerns the proper perimeters of jury arguments. Here, punishment was assessed by the trial court rather than a jury. Because the State's argument was not subject to objection, trial counsel's performance was not deficient because of his failure to object. Appellant's sixth point is overruled.

In sum, all of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Publish.